UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

EXECUTIVE RISK INDEMNITY, INC.,

Plaintiff,

v.

JOSEPH P. FERRUCCI, as the Court-Appointed Receiver for Mix It For Me.com d/b/a MixITforMe, Inc., CORY JOHNSON, DAVID ANDREWS a/k/a "DAVID WHITAKER", PATRICK HOLT, and SALLY HERSEY

Defendants.

Case No. _______

CA 06 372T

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff Executive Risk Indemnity, Inc. ("ERII"), through its undersigned counsel, hereby asserts this Complaint against defendants Joseph P. Ferrucci, in his capacity as the Court-Appointed Receiver for Mix It For Me.com d/b/a MixITforMe, Inc. ("MIFM"), Cory Johnson, David Andrews a/k/a "David Whitaker", Patrick Holt, and Sally Hersey (collectively, the "Defendants"), and alleges as follows:

### INTRODUCTION

1. This action concerns Power Source Policy Number 6803-4755 (the "Policy") issued by ERII to MIFM for the **Policy Period** of September 28, 2005 to September 28, 2006. 1/ Defendants have demanded coverage under the Policy in connection with four actions styled: (a) Siiber Marketing, Inc. v. MixItForMe, Inc. and Cory Johnson, Case No. 1:05CV2972 (N.D. Ohio) (the "Siiber Action"); (b) Internet Sales Solutions, LLC v. Dave Andrews, Cory Johnson, Patrick Holt and Mixitforme.com, Case No. 2:06-cv-02036-MPM-DGB (C.D. Ill.) (the "ISS Action"); (c) Key West Marketing, Inc. v. Mix It For Me, Inc., Interactive Learning Networks, Inc. d/b/a Cutting Edge Technologies, Cory Johnson, David Andrews, and

1/ Terms in bold are defined in the Policy.

Sally Hersey, Case No. 2006-0627 (R.I. Super. Ct., Providence) (the "Key West Action"); and (d) American Express Bank, FSB v. Cory Johnson, C.A. No. KC 06-443 (R.I. Super. Ct., Kent) (the "Amex Action") (collectively, the "Underlying Actions").

2. The Complaints in the Siiber Action, ISS Action and Key West Action allege that the Defendants induced the plaintiffs in those actions to enter into contracts or agreements for the purchase of electronic goods from MIFM, that the plaintiffs paid MIFM for such goods, and that the Defendants breached their contractual obligations to deliver some or all of the purchased goods and improperly retained the plaintiffs' payments. All told, the underlying plaintiffs in the Siiber Action, ISS Action, and Key West Action allege that MIFM received more than $2.9 million for goods that it never delivered. The Amex Action alleges that Mr. Johnson failed to make $947,126.81 in payments due on his American Express Business Platinum Card Account ("Account").

3. In this litigation, ERII seeks declarations that: (a) the Policy does not afford coverage for MIFM and Mr. Johnson with respect to the Siiber Action; (b) the Policy does not afford coverage for MIFM and Mr. Johnson with respect to the ISS and Key West Actions; (c) the Policy does not afford coverage for Mr. Andrews with respect to the ISS and Key West Actions; (d) the Policy does not afford coverage for Mr. Johnson with respect to the Amex Action; and (e) the Policy does not afford indemnity coverage for Messrs. Andrews and Holt and Ms. Hersey for the disgorgement of ill-gotten gains or improper profits and the multiple portion of any multiplied damage award in the ISS and Key West Actions.

**PARTIES**

4. Plaintiff, Executive Risk Indemnity, Inc., is a stock insurance company, organized and incorporated under the laws of the State of Delaware, with its principal place of business and administrative office in Warren, New Jersey.

5. Defendant Joseph P. Ferrucci (the "Receiver") is a resident of the State of Rhode Island. Mr. Ferrucci is named in this action solely in his capacity as the Court-Appointed

Receiver of MIFM, a Rhode Island corporation with its principal place of business in Providence, Rhode Island.

6. On information and belief, Defendant Cory Johnson is a resident of the State of Rhode Island and is the president and owner of MIFM.

7. On information and belief, Defendant David Andrews is a resident of the State of Rhode Island. Mr. Andrews is alleged in the ISS and Key West Actions to have been the Chief Executive Officer of MIFM. On information and belief, Mr. Andrews goes by one or more aliases including "David Whitaker".

8. On information and belief, Defendant Patrick Holt is a resident of the State of Rhode Island. Mr. Holt is alleged in the ISS Action to have been the Chief Operating Officer of MIFM.

9. On information and belief, Defendant Sally Hersey is a resident of the State of Rhode Island. Ms. Hersey is alleged in the Key West Action to have been the Chief Project Director of MIFM.

## JURISDICTION AND VENUE

10. This Court has jurisdiction over the subject matter of this Complaint pursuant to 28 U.S.C. § 1332(a) and 28 U.S.C. §§ 2201 and 2202. ERII and defendants are of diverse citizenship, and the amount in controversy exceeds $75,000.

11. This Court has personal jurisdiction over each of the defendants pursuant to Rule 4(k)(1)(A) of the Federal Rules of Civil Procedure because each of the defendants resides in this State. This Court also has personal jurisdiction over each of the defendants pursuant to the Rhode Island Long Arm Statute because each of the defendants has engaged in transactions or business within this State from which this action arises.

12. Venue lies in this federal district pursuant to 28 U.S.C. § 1391(a) because a substantial part of the events or omissions giving rise to ERII's claims occurred in this judicial district.

## FACTS

### I. THE APPLICATION FOR THE POLICY

13. On behalf of MIFM, Cory Johnson executed an application on September 28, 2005 for the Policy (the "Application"). A true and correct copy of the Application is attached as Exhibit A.

14. The Application stated that Cory Johnson was the 100% owner of MIFM.

15. The Application also included a Prior Knowledge Statement that read: "PRIOR KNOWLEDGE STATEMENT: No person proposed for coverage is aware of any facts or circumstances which he or she has reason to suppose might give rise to a future claim that would fall within the scope of any of the proposed coverages for which the Applicant does not currently maintain insurance, or within any of the larger limits of liability sought by the Applicant, except: None ☐ or ___________." The Application provided space in which the applicant was to answer this question. Johnson left those lines blank and instead checked the box next to the word "None."

16. Directly following the Prior Knowledge Statement, the "Prior Knowledge Exclusion" stated: "The Applicant understands and agrees that if any such facts or circumstances exist, whether or not disclosed, any claim or action arising from them is excluded under any policy issued by [ERII]. It is possible that future claims may be covered by the Applicant's existing insurance or may affect the coverage for which this Application is made. Therefore, any knowledge of facts or circumstances that may lead to future claims is important to report on this Application form."

17. In the Application, Cory Johnson declared that the statements made therein were true and complete, to the best of his knowledge and belief, after reasonable inquiry. He stated his understanding that ERII would rely upon the Application in issuing the Policy, and he agreed that the Application would be the basis of the Policy, and would be deemed to be attached to and form a part of the Policy. Clause XII(A) of the Policy's General Terms and Conditions Section ("General Terms") provides that "[i]n granting coverage to the **Insureds** under this

Policy, [ERII] has relied upon the declarations and statements in the written application(s) for this Policy. Such declarations and statements are the basis of the coverage under this Policy and shall be considered as incorporated in and constituting part of this Policy."

18. ERII relied on the statements in the Application, including without limitation the Prior Knowledge Statement, in issuing the Policy. The statements in the Application, including without limitation the Prior Knowledge Statement, were material to ERII's decision to issue the Policy.

## II. THE POLICY

19. On or about October 10, 2005, ERII issued the Policy to MIFM for the **Policy Period** of September 28, 2005 to September 28, 2006. The Policy provides a Combined Maximum Aggregate Limit of Liability for all **Claims** under all **Liability Coverage Sections** of the Policy of $2,000,000. A true and correct copy of the Policy is attached as Exhibit B.

20. Clause I(A) of the Policy's Directors & Officers Liability Coverage Section ("D&O Coverage Section") provides in part that ERII "shall pay **Loss** on behalf of the **Insured Persons** resulting from any **D&O Claim** first made against such **Insured Persons** during the **Policy Period** . . . for **Wrongful Acts**, but only to the extent the **Insured Organization** does not indemnify the **Insured Persons** for such **Loss**."

21. Clause I(B) of the Policy's D&O Coverage Section provides in part that ERII "shall pay **Loss** on behalf of the **Insured Organization** resulting from any **D&O Claim** first made against **Insured Persons** during the **Policy Period** . . . for **Wrongful Acts** to the extent the **Insured Organization** indemnifies the **Insured Persons** for such **Loss**."

22. On information and belief, MIFM is not indemnifying Messrs. Johnson, Andrews or Holt or Ms. Hersey in connection with the Underlying Actions.

23. Clause I(C) of the Policy's D&O Coverage Section provides in part that ERII "shall pay **Loss** on behalf of the **Insured Organization** resulting from any **Insured Organization Claim** first made against such **Insured Organization** during the **Policy Period** . . . for **Wrongful Acts**."

24. The term "**Insured**" is defined as "the **Insured Organization** and any **Insured Person**." The term "**Insured Organization**" is defined to include MIFM. The term "**Insured Person**" means "any past, present or future **Executive** or **Employee** of the **Insured Organization**."

25. The term "**Wrongful Acts**" is defined for purposes of Clause I(A) of the Policy's D&O Coverage Section to mean "any error, misstatement, misleading statement, act, omission, neglect, or breach of duty committed, attempted, or allegedly committed or attempted by . . . any **Insured Person** in his or her capacity as such, or any matter claimed against any **Insured Person** solely by reason of his or her status as such" or "any **Outside Capacity Wrongful Act**."

26. Clause II(N) of the Policy's D&O Coverage Section defines "**Outside Capacity Wrongful Act**" as "any error, misstatement, misleading statement, act, omission, neglect, or breach of duty committed, attempted, or allegedly committed or attempted by an **Insured Person** in his or her **Outside Capacity**." Clause II(M) of the Policy's D&O Coverage Section defines "**Outside Capacity**" as "service by an **Insured Person** as a director, officer, trustee, regent, governor or any equivalent executive position in an **Outside Entity**, but solely during the time that such service is with the knowledge and consent or at the request of the **Insured Organization**." The term "**Outside Entity**" is defined to include 501(c)(3) tax-exempt organizations and certain non-profit entities organized for religious or charitable purposes.

27. Clause II(L) of the Policy's D&O Coverage Section defines "**Loss**" in relevant part as "the total amount which any **Insured** becomes legally obligated to pay as a result of any **Claim** made against any **Insured** for **Wrongful Acts**, including, but not limited to, damages (including punitive or exemplary damages, to the extent such damages are insurable…), judgments, settlements, pre-judgment and post-judgment interest and **Defense Costs**." Clause II(L) further provides that "**Loss** does not include: . . . (2) matters uninsurable under the law pursuant to which this Policy is construed; (3) taxes, fines or penalties imposed by law, or the multiple portion of any multiplied damage award . . . ."

28. Clause IX(A)(1) of the Policy's General Terms provides in part that ERII "shall have the right and duty to defend any **Claim** covered by this Policy. Coverage shall apply even if any of the allegations are groundless, false or fraudulent. The **Company's** duty to defend any **Claim** shall cease upon exhaustion of the applicable Limit of Liability."

29. Clause VII(A)(1) of the Policy's General Terms provides that "[a]ny **Insured** shall, as a condition precedent to exercising their rights under any **Liability Coverage Section**, give to the **Company** written notice as soon as practicable of any **Claim**."

30. Clause IX(B) of the Policy's General Terms provides that "[t]he **Insureds** agree to provide the **Company** with all information, assistance and cooperation which the **Company** reasonably requests and agree they will do nothing that may prejudice the **Company's** position or its potential or actual rights of recovery."

31. The Policy also includes a number of exclusions from coverage. Among them, as discussed in Paragraphs 15-16, *supra*, the Policy excludes coverage for any claim or action arising from facts or circumstances that a person proposed for coverage had reason to suppose might give rise to a future claim at the time the Application was submitted.

32. In addition, Clause III(C)(2) of the D&O Coverage Section (the "Contract Exclusion") provides in part that no coverage shall be available under Clause I(C) of the D&O Coverage Section for any **Insured Organization Claim** "based upon, arising from, or in consequence of any actual or alleged liability of an **Insured Organization** under any written or oral contract or agreement, provided that this Exclusion (C)(2) shall not apply to the extent that an **Insured Organization** would have been liable in the absence of the contract or agreement."

33. Clause III(A)(11) of the D&O Coverage Section (the "Illegal Profit or Advantage Exclusion") provides in part that no coverage shall be available under the D&O Coverage Section for any **Claim** against an **Insured** "based upon, arising from, or in consequence of such **Insured** having gained in fact any profit, remuneration or financial advantage to which such **Insured** was not legally entitled."

34. Clause III(A)(10) of the D&O Coverage Section (the "Fraud Exclusion") bars coverage for **Claims** arising from "any deliberately fraudulent act or omission or any willful violation of any statute or regulation by such **Insured**, if a final and non-appealable judgment or adjudication adverse to such **Insured** establishes such a deliberately fraudulent act or omission or willful violation." Clause III(A)(2) of the D&O Coverage Section (the "Prior Demand Exclusion") bars coverage for **Claims** arising from "a written demand . . . against any **Insured** on or prior" to September 28, 2005, or "the same or any substantially similar fact, circumstance or situation underlying or alleged therein." ERII is not aware of any adjudication or written demand that would trigger the Fraud Exclusion or Prior Demand Exclusion respectively, and has reserved its rights to deny coverage under these and other provisions of the Policy pending the completion of its continuing coverage investigation or other future developments.

## III. THE RECEIVERSHIP AND CRIMINAL INVESTIGATIONS

35. On March 22, 2006, Bank Rhode Island filed a Petition with the Rhode Island Superior Court to appoint a Receiver for MIFM.

36. On May 24, 2006, the Rhode Island Superior Court appointed Mr. Ferrucci (the "Receiver") as MIFM's Permanent Receiver. On information and belief, Mr. Ferrucci has been given authority to act on MIFM's behalf and to represent its interests, including in any litigation.

37. On information and belief, at or around the time the Bank Rhode Island filed its Petition, federal and state criminal investigations were commenced regarding possible criminal and fraudulent activity in connection with MIFM's operations. On information and belief, these investigations are ongoing.

## IV. THE UNDERLYING ACTIONS

38. On March 27, 2006, MIFM's insurance broker, Decotis Insurance, sent a facsimile to ERII attaching a printed e-mail. The printed e-mail provided the case captions for the Siiber, ISS, and Key West Actions. The "re" line of the facsimile from Decotis Insurance stated "Mix It For Me Lawsuit D&O Policy 6803-4755." The text of the message stated "Please

see attached email with regard to Lawsuti [sic] for the above insured. Please advise. Please confirm receipt of this email." The facsimile did not include copies of any pleadings from the any of the Underlying Actions.

39. ERII subsequently commenced an investigation concerning the availability of coverage under the Policy for the Siiber, ISS, and Key West Actions and whether certain misrepresentations and omissions in the Application and other information provided during the underwriting process rendered the Policy void *ab initio*. While those investigations were pending and subject to their results, ERII authorized counsel to enter appearances in the Siiber, ISS, and Key West Actions on behalf of the Defendants.

40. On July 12, 2006, Cory Johnson sent a copy of the Amex Action Complaint to ERII by e-mail, requesting coverage.

***The Siiber Action***

41. The Siiber Action was commenced when Siiber Marketing, Inc. ("Siiber") filed a Complaint against MIFM and Defendant Johnson on November 30, 2005, in the Court of Common Pleas for Lake County, Ohio. A true and correct copy of the Complaint, as retrieved from the website of the United States District Court for the Northern District of Ohio, is attached as Exhibit C.

42. ERII did not receive notice of the Siiber Action until March 27, 2006. ERII did not receive a copy of the Siiber Action Complaint until May 22, 2006.

43. Prior to notifying ERII of the Siiber Action, Defendants MIFM and Johnson retained counsel, removed the Siiber Action to Federal Court, and filed an Answer and Counterclaim against Siiber and Peter Roesner, who Defendants MIFM and Johnson allege is the owner of Siiber. A copy of MIFM's and Johnson's Answer and Counterclaim, retrieved from the website of the United States District Court for the Northern District of Ohio, is attached as Exhibit D.

44. The Complaint in the Siiber Action alleges that in August 2005, Siiber entered into an oral contract with MIFM pursuant to which Siiber would place bulk orders with

MIFM for delivery to Siiber. Siiber alleges that after MIFM missed several promised shipment dates, Siiber and MIFM allegedly revised the terms of their agreement so that Siiber would pay MIFM and MIFM was to ship the ordered products directly to Siiber's customers. Siiber alleges that it paid for many of its orders through MIFM's American Express Merchant Account.

45. Siiber further alleges that MIFM failed to ship significant numbers of the purchased products to Siiber's customers, and that on September 26, 2005, Siiber placed a hold with American Express for $585,440.98 for payments previously made to MIFM for orders that MIFM had not shipped.

46. The Siiber Action Complaint alleges that on October 7, 2005, Defendants MIFM and Johnson signed a promissory note, a copy of which was attached to the Siiber Action Complaint, to make four payments to Siiber totaling $564,185.51. MIFM allegedly provided to Siiber four post-dated checks totaling this amount – which also were attached to the Complaint – and later stopped payment on those checks.

47. In the Complaint, Siiber asserts causes of action for breach of contract, breach of contract on a promissory note, fraud of contract in a business arrangement, fraud of contract on a promissory note, wrongful conversion of Siiber's property, and a cause of action under Ohio Revised Code § 2307.61, for treble damages from MIFM's and Johnson's alleged passing of bad checks.

48. On February 7, 2006, MIFM and Cory Johnson filed an Answer and Counterclaim. In that pleading, MIFM and Johnson allege that by no later than late September 2005, Siiber's owner threatened MIFM that any failure to accede to his demands to fulfill order requests would result in his contacting American Express and requesting chargebacks on all ordered merchandise. MIFM and Mr. Johnson further state that on or about September 27, 2005, American Express notified MIFM that Siiber had placed multiple chargebacks on MIFM's American Express Merchant Account, totaling $585,440.98. MIFM alleges that these chargebacks immediately prompted American Express to place a reserve requirement on the Merchant Account, which MIFM and Mr. Johnson state was MIFM's "primary business tool."

49. As noted above, MIFM and Cory Johnson have alleged that by no later than September 27, 2005, MIFM was aware that Siiber had placed chargebacks totaling $585,440.98 on its American Express Merchant Account. Nevertheless, on September 28, 2005, Johnson failed to disclose any facts and circumstances which any person proposed for coverage under the Policy had reason to suppose might give rise to a future claim that might fall under the Policy's coverage. In fact, Johnson affirmatively warranted that, after reasonable inquiry, he was not aware of any such facts or circumstances.

50. On or about May 25, 2006, the Receiver filed an *Ex Parte* Petition for Instructions in the Providence County Superior Court, requesting permission to allow the entry of a default judgment against MIFM in the Siiber Action in the amount of $404,185.51, together with interest and attorneys' fees, as well as permission to dismiss MIFM's Counterclaim in the Siiber Action. The Receiver's Petition stated that "the Receiver has come to the opinion that Siiber has a significant likelihood of success upon its Complaint, and conversely, that it is unlikely that [MIFM's] Counterclaim will succeed on the merits."

51. The Receiver did not seek ERII's consent before seeking to allow entry of a default judgment in the Siiber Action or before making the statements regarding the Receiver's views on the likely outcome of the Siiber Action.

52. MIFM and Johnson did not timely comply with the Policy's notice provision, *supra,* Paragraph 29.

53. Upon learning of the Receiver's actions, by letter dated June 28, 2006, ERII immediately advised the Receiver that ERII did not consent to the entry of a default judgment.

54. By letter dated July 26, 2006, ERII informed the Receiver and Cory Johnson that, based upon the information available to ERII, the Policy does not cover the Siiber Action because the Prior Knowledge Exclusion precludes coverage. ERII also stated that coverage is barred because the Receiver prejudiced ERII's position, the Contract and Illegal Profit or Advantage Exclusions apply, the relief requested by Siiber does not constitute **Loss**, and because MIFM and Johnson breached the Policy's notice condition. ERII invited the Receiver and Cory

Johnson to submit any information that would suggest any conclusions to the contrary. ERII has not received any such information to date, and upon information and belief, no such information exists. ERII has agreed to defend the Defendants to the Siiber Action under a full reservation of its rights, while ERII seeks confirmation from this Court that ERII has no duty to defend or to indemnify MIFM or Johnson with respect to the Siiber Action.

***The ISS Action***

55. The ISS Action was commenced when Internet Sales Solutions, LLC ("ISS") filed a Complaint against MIFM and Defendants Andrews, Johnson and Holt on February 17, 2006, in the United States District Court for the Central District of Illinois. A true and correct copy of the Complaint in the ISS Action, as retrieved from the website of the United States District Court for the Central District of Illinois, is attached as Exhibit E.

56. In its Complaint, ISS alleges that MIFM and Messrs. Andrews, Johnson and Holt fraudulently induced ISS to enter into a contract or agreement for the purchase of 1880 IPOD NANO units, and that ISS wired $319,000 to MIFM in payment for such units. ISS alleges that the defendants failed to ship any of the purchased IPODS to ISS.

57. In the Complaint, ISS asserts causes of action for fraud and breach of contract, and seeks return of the $319,000 and other damages.

58. By letter dated July 12, 2006, ERII wrote to the Receiver, Messrs. Johnson, Holt, and Andrews, and Ms. Hersey requesting the current contact information for Mr. Andrews, a/k/a Mr. Whitaker, for pruposes of investigating and defending the litigation against Andrews/Whitaker. ERII sent the letter to Andrews/Whitaker at his last known business address, but the letter was returned as non-deliverable.

59. By letter dated July 20, 2006, counsel for ERII wrote to Andrews/Whitaker at both his last known business address and his last known home address, reserving ERII's rights to deny coverage to Andrews/Whitaker for breach of the Policy's cooperation condition, *supra*, Paragraph 30. The letter also requested that Andrews/Whitaker contact ERII as soon as possible. Both letters were returned by the delivery service as undeliverable.

60. By letter dated July 20, 2006, counsel for ERII forwarded a copy of its July 20, 2006 letter to Andrews/Whitaker to two attorneys who were the only individuals whom ERII understood had been recently contacted by Andrews/Whitaker, and requested that those individuals forward the letter to Andrews/Whitaker.

61. ERII has also requested that the attorneys it has appointed to defend Andrews/Whitaker in the ISS Action and the Key West Action inform Andrews/Whitaker, if they are able to locate him, of the need for him to contact ERII and the attorneys it has appointed for him in order to cooperate in the defense of the actions filed against him.

62. On information and belief, Andrews/Whitaker knew that ERII was trying to contact him. Andrews/Whitaker spoke on at least one occasion with counsel that ERII had retained for him in the ISS Action, but never contacted ERII as requested.

63. To date, Andrews/Whitaker has failed to contact ERII regarding the matters filed against him, and has failed to cooperate with counsel appointed by ERII in the defense of those matters and to cooperate with ERII in its investigation of those matters.

64. By letter dated August 3, 2006, ERII informed the Receiver that, based upon the information available to ERII, the Contract Exclusion bars coverage for MIFM for the ISS Action because the ISS Action arises out of MIFM's alleged liability under a contract or agreement. ERII also informed the Receiver and Defendant Johnson that the Illegal Profit or Advantage Exclusion bars coverage for MIFM and Johnson because the ISS Action arises out of MIFM (and Johnson, as its sole owner) gaining profit and financial advantage to which they were not legally entitled. In the same letter, ERII also denied any duty to indemnify any of the defendants for the disgorgement of ill-gotten gains, including without limitation the $319,000 payment allegedly received by MIFM. ERII invited the Receiver and Defendants Johnson, Andrews and Holt to submit any information that would suggest any conclusions to the contrary. ERII has not received any such information to date, and upon information and belief, no such information exists. ERII has agreed to defend MIFM and Johnson with respect to the ISS Action

under a full reservation of its rights, while ERII seeks confirmation from this Court that ERII has no duty to defend or to indemnify MIFM and Johnson with respect to the ISS Action.

65. On account of the continued failure of Defendant Andrews a/k/a Whitaker to contact ERII, ERII has informed Andrews/Whitaker that he is in breach of the Policy's cooperation condition, supra, Paragraph 30. ERII has agreed to defend Andrews/Whitaker with respect to the ISS Action under a full reservation of its rights, while ERII seeks confirmation from this Court that ERII has no duty to defend or indemnify Andrews/Whitaker.

66. ERII is presently defending Defendant Holt with respect to the ISS Action under a full reservation of its rights.

***The Key West Action***

67. The Key West Action was commenced when Key West Marketing, Inc. ("Key West") filed a Complaint against MIFM, Interactive Learning Networks, Inc. d/b/a Cutting Edge Technologies ("Cutting Edge"), and Defendants Johnson, Andrews and Hersey on February 1, 2006, in Providence County Superior Court. A true and correct copy of the Complaint, as retrieved from the Providence County Superior Court file, is attached as Exhibit F.

68. Key West alleges that MIFM and Defendants Johnson, Andrews and Hersey fraudulently induced Key West to enter into four separate contracts or agreements for the purchase of Sony Play Station Portables, Sony Play Stations, X-Box 360's, and X-Box Forzas, memorialized by four invoices. Two of such contracts or agreements allegedly were arranged through Cutting Edge, which allegedly served as a middleman or broker for MIFM.

69. Key West alleges that it made payments of nearly $2.8 million pursuant to these contracts or agreements to MIFM and Cutting Edge. Key West alleges that MIFM failed to ship all of the Sony Play Station Portables and X-Box 360's and some of the Sony Play Stations and X-Box Forzas that Key West had purchased.

70. In the Complaint, Key West asserts causes of action against MIFM for rescission of one of the agreements, breach of contract, breach of the covenant of good faith and fair dealing, fraud, promissory estoppel, unjust enrichment, and constructive trust. Key West

also asserts causes of action against Defendants Johnson, Andrews and Hersey for fraud and for alleged violations of Rhode Island's Racketeering Influence and Corrupt Organizations ("RICO") statute.

71. By letter dated August 3, 2006, ERII informed the Receiver that, based upon the information available to ERII, the Contract Exclusion bars coverage for MIFM for the Key West Action because the Key West Action arises out of MIFM's alleged liability under a contract or agreement. ERII also informed the Receiver and Defendant Johnson that the Illegal Profit or Advantage Exclusion bars coverage for MIFM and Johnson for the Key West Action because the Claim arises out of MIFM (and Johnson, as its sole owner) gaining profit and financial advantage to which they were not legally entitled. In the same letter, ERII also denied any duty to indemnify any of the defendants for the multiple portion of any multiplied damage award and for the disgorgement of ill-gotten gains, including without limitation the payments allegedly received by MIFM. ERII invited the Receiver and Defendants Johnson, Andrews and Hersey to submit any information that would suggest any conclusions to the contrary. ERII has not received any such information to date, and upon information and belief, no such information exists. ERII has agreed to defend MIFM and Johnson with respect to the Key West Action under a full reservation of its rights while ERII seeks confirmation from this Court that ERII has no duty to defend or to indemnify MIFM and Mr. Johnson with respect to the Key West Action.

72. On account of the continued failure of Defendant Andrews a/k/a Whitaker to contact ERII, ERII has informed Andrews/Whitaker that he is in breach of the Policy's cooperation condition, supra, Paragraph 30. ERII has agreed to defend Andrews/Whitaker with respect to the Key West Action under a full reservation of its rights, while ERII seeks confirmation from this Court that ERII has no duty to defend or indemnify Andrews/Whitaker.

73. ERII is presently defending Defendant Hersey with respect to the Key West Action under a full reservation of its rights.

***The Amex Action***

74. The Amex Action was commenced when American Express Bank, FSB ("Amex") filed a Complaint against Cory Johnson on May 19, 2006, in Kent County Superior Court. A true and correct copy of the Complaint in the Amex Action, as forwarded to ERII from Defendant Johnson, is attached as Exhibit G.

75. Amex alleges that Defendant Johnson was the holder of an American Express Business Platinum Card Account ("Account") and failed to pay for certain charges that were incurred on the Account. The unpaid balance on the Account allegedly totaled $947,126.81.

76. In the Complaint, Amex asserts causes of action for breach of contract, judgment for account stated, and unjust enrichment, and seeks damages in the sum of $947,126.81, plus attorneys fees, costs, and interest.

77. The Complaint does not refer to MIFM, and there is no indication within the four corners of the Complaint that the Amex Action has anything to do with MIFM.

78. On July 12, 2006, Defendant Johnson spoke with an employee of Federal Insurance Company. Johnson stated at that time that the charges at issue in the Amex Action were incurred on behalf of MIFM.

79. By letter dated August 7, 2006, ERII informed Defendant Johnson that, based upon the information available to ERII, the Policy does not cover the Amex Action because: (a) nothing in the Complaint suggests that Johnson's alleged failure to pay the Account balance or the charges on the Account bears any relation to work that was done on behalf of MIFM or any **Outside Entity** with MIFM's knowledge and consent, and thus the Amex Action Complaint does not allege any **Wrongful Acts** and does not fall under the Policy's Insuring Clauses; and (b) even if the charges on the Account were incurred on MIFM's behalf, the Policy's Illegal Profit or Advantage Exclusion would bar coverage because Mr. Johnson was the sole owner of MIFM and thus in fact would have benefited from the charges made on MIFM's behalf. ERII further denied that it had any duty to indemnify Mr. Johnson in the Amex Action

for the disgorgement of ill-gotten gains. ERII invited Mr. Johnson to submit any information that would suggest any conclusions to the contrary. ERII has not received any such information to date, and upon information and belief, no such information exists. ERII has agreed to defend Johnson in the Amex Action under a full reservation of its rights until such time that ERII can obtain confirmation from this Court that ERII has no duty to defend or to indemnify Johnson with respect to the Amex Action.

## COUNT I
## Declaratory Judgment – No Duty to Defend or Indemnify with Respect to Siiber Action

80. ERII realleges and reincorporates by reference herein all of the foregoing allegations.

81. By no later than September 27, 2005, MIFM was aware that Siiber had placed chargebacks totaling $585,440.98 on MIFM's American Express Merchant Account. MIFM further was aware that these chargebacks related to amounts that Siiber had paid MIFM for goods that MIFM had not delivered.

82. On September 28, 2005, Mr. Johnson executed the Application on MIFM's behalf. The Prior Knowledge Statement in the Application required the disclosure of any facts or circumstances that any person proposed for coverage had reason to suppose might give rise to a future claim that would fall within the scope of proposed coverage under the Policy. Mr. Johnson left the lines next to the Prior Knowledge Statement blank and instead checked the box "None."

83. The Prior Knowledge Exclusion bars coverage for the Siiber Action because it arises from facts or circumstances that were required to have been disclosed in the Prior Knowledge Statement in the Application.

84. The Contract Exclusion bars coverage for MIFM for the Siiber Action because the Siiber Action arises out of and is a consequence of defendants' alleged liability under various contracts and agreements.

85. The Illegal Profit or Advantage Exclusion bars coverage for the Siiber Action because that **Claim** is based upon, arises from, or is in consequence of MIFM (and Johnson, as its sole owner) having gained in fact profit, remuneration or financial advantage to which they were not legally entitled. MIFM and Johnson were not entitled to the payments they allegedly retained without shipping the products that were ordered.

86. The Prior Demand Exclusion bars coverage for the Siiber Action to the extent the Siiber Action is based upon, arises from, or is in consequence of a written demand against any **Insured** made on or prior to September 28, 2005, or the same or any substantially similar fact, circumstance or situation underlying such demand or alleged in such demand.

87. The Policy's notice provision, clause VII(A)(1) required MIFM and Johnson, as a condition precedent to exercising their rights under the Policy, to give ERII written notice as soon as practicable of any Claim. MIFM and Johnson breached this condition.

88. By asserting in court-filed papers, without notice to or the consent of ERII, that he had "come to the opinion that Siiber has a significant likelihood of success upon its Complaint, and conversely, that it is unlikely that [MIFM's] counterclaim will succeed on the merits," the Receiver prejudiced ERII's position with respect to the Siiber Action, in breach of Clause IX(B) of the Policy, *supra* Paragraph 30.

89. An actual and justiciable controversy exists between ERII and the Receiver and Cory Johnson with respect to the parties' rights and obligations under the Policy. In particular, MIFM and Johnson seek coverage under the Policy for the Siiber Action, and ERII contends, for the reasons set forth here and in its July 26, 2006 correspondence, that it is not obligated to defend or indemnify MIFM and Johnson with respect to the Siiber Action because one or more of the Policy's terms, conditions, exclusions or limitations bars coverage for the Siiber Action.

90. The entry of a declaratory judgment concerning the application of the Prior Knowledge Exclusion, Contract Exclusion, Illegal Profit or Advantage Exclusion, the Prior

Demand Exclusion, and Clauses VII(A)(1) and IX(B) of the Policy's General Terms is necessary and would be effective to resolve the controversy between the parties.

91. For these reasons, ERII requests that the Court enter judgment declaring that ERII is not obligated to defend or indemnify MIFM or Cory Johnson in connection with the Siiber Action because the Policy does not afford coverage for the Siiber Action.

**COUNT II**
**Declaratory Judgment – No Duty to Defend or Indemnify MIFM or Defendant Johnson with Respect to ISS and Key West Actions**

92. ERII realleges and reincorporates by reference herein all of the foregoing allegations.

93. ISS alleges that MIFM and Defendants Andrews, Johnson and Holt fraudulently induced ISS to enter into a contract or agreement for the purchase of 1880 IPOD NANO units, and that ISS wired MIFM $319,000 in payment for such units. ISS further alleges that the defendants nevertheless failed to ship any of the purchased IPODS to ISS.

94. Key West alleges that MIFM and Defendants Johnson, Andrews and Hersey fraudulently induced Key West to enter into four separate contracts or agreements for the purchase of Sony Play Station Portables, Sony Play Stations, X-Box 360's, and X-Box Forzas, and that Key West wired nearly $2,800,000 in payment for such units. Key West further alleges that the defendants nevertheless failed to ship all of the Sony Play Station Portables and X-Box 360's and some of the Sony Play Stations and X-Box Forzas that Key West had purchased.

95. The Contract Exclusion bars coverage for MIFM for the Key West and ISS Actions because those Actions arise out of and are in consequence of defendants' alleged liability under various contracts and agreements.

96. The Illegal Profit or Advantage Exclusion bars coverage for MIFM and Johnson for the Key West and ISS Actions because those **Claims** are based upon, arise from, or are in consequence of MIFM (and Johnson, as its sole owner) having gained in fact profit, remuneration or financial advantage to which they were not legally entitled. MIFM and Johnson

were not entitled to the payments they allegedly retained without shipping the products that were ordered.

97. An actual and justiciable controversy exists between ERII and the Receiver and Cory Johnson with respect to the parties' rights and obligations under the Policy. In particular, MIFM seeks coverage under the Policy for the ISS and Key West Actions, and ERII contends, for the reasons set forth here and in its letters dated August 3, 2006, that it is not obligated to defend or indemnify MIFM or Johnson with respect to those actions because one or more of the Policy's terms, conditions, exclusions or limitations bars coverage for MIFM and Johnson with respect to the ISS and Key West Actions.

98. The entry of a declaratory judgment concerning the application of the Contract Exclusion and the Illegal Profit or Advantage Exclusion is necessary and would be effective to resolve the controversy between the parties.

99. For these reasons, ERII requests that the Court enter judgment declaring that ERII is not obligated to defend or indemnify MIFM or Cory Johnson in connection with the ISS and Key West Actions because the Policy does not afford coverage for MIFM or Johnson with respect to those actions.

**COUNT III**
**Declaratory Judgment – No Duty to Defend or Indemnify Defendant Andrews/Whitaker with Respect to ISS and Key West Actions**

100. ERII realleges and reincorporates by reference herein all of the foregoing allegations.

101. ERII has attempted on multiple occasions to contact Andrews/Whitaker and has requested that Andrews/Whitaker contact ERII. Andrews/Whitaker never contacted ERII and failed to cooperate with ERII in its coverage investigation and its defense of the ISS and Key West Actions.

102. Clause IX(B) of the Policy's General Terms requires all **Insureds** to provide ERII with all information, assistance and cooperation which ERII reasonably requests. Compliance with this clause is a condition precedent to coverage.

103. Andrews/Whitaker's failure to comply with his obligation to provide ERII with all information, assistance and cooperation which ERII reasonably has requested has prejudiced ERII's ability to investigate and to defend the ISS and Key West Actions.

104. An actual and justiciable controversy exists between ERII and David Andrews / David Whitaker with respect to the parties' rights and obligations under the Policy. In particular, MIFM requested that ERII provide coverage to Andrews/Whitaker under the Policy for the ISS and Key West Actions, and ERII contends, for the reasons set forth here and in its letter dated July 20, 2006, that it is not obligated to defend or indemnify Andrews/Whitaker with respect to those actions because one or more of the Policy's terms, conditions, exclusions or limitations bars coverage for Andrews/Whitaker with respect to the ISS and Key West Actions.

105. The entry of a declaratory judgment concerning the application of the Policy's cooperation condition is necessary and would be effective to resolve the controversy between the parties.

106. For these reasons, ERII requests that the Court enter judgment declaring that ERII is not obligated to defend or indemnify Andrews/Whitaker in connection with the ISS and Key West Actions because Andrew/Whitaker has not satisfied a condition precedent to coverage under the Policy with respect to those actions.

**COUNT IV**
**Declaratory Judgment – No Duty to Defend or Indemnify with Respect to Amex Action**

107. ERII realleges and reincorporates by reference herein all of the foregoing allegations.

108. Clause I(A) of the Policy affords coverage for **Loss** arising from certain **D&O Claims** that allege one or more **Wrongful Acts**. The term "**Wrongful Acts**" includes certain actions or omissions allegedly committed by **Insured Persons** in their capacity as such or

in their capacity as a director or officer for an **Outside Entity** with MIFM's knowledge and consent.

109. At no time does the Amex Action mention MIFM, and there is no indication within the four corners of the Complaint that the Amex Action has anything to do with Mr. Johnson's acting on behalf of MIFM or any **Outside Entity** with MIFM's knowledge or consent. The Amex Action thus does not fall within the Insuring Clause of the Policy, and is not covered under the Policy.

110. Even if the Amex Action fell under the Insuring Clause of the Policy, coverage for the Amex Action would be barred by the Illegal Profit or Advantage Exclusion, which bars coverage for any **Claim** against an **Insured** based upon, arising from, or in consequence of such **Insured** having gained in fact any profit, remuneration or financial advantage to which such **Insured** was not legally entitled. Amex alleges that Defendant Johnson failed to pay for $947,126.81 in charges incurred on the Account, in violation of the terms of the Account Agreement.

111. An actual and justiciable controversy exists between ERII and Defendant Johnson with respect to the parties' rights and obligations under the Policy. In particular, Johnson seeks coverage under the Policy for the Amex Action, and ERII contends, for the reasons set forth here and in its August 7, 2006 correspondence, that it is not obligated to defend or indemnify him with respect to the Amex Action because the Amex Action does not fall within the Policy's scope of coverage and because one or more of the Policy's terms, conditions, exclusions or limitations bars coverage for the Amex Action.

112. The entry of a declaratory judgment concerning the application of the definition of "**Wrongful Act**" and the Illegal Profit or Advantage Exclusion is necessary and would be effective to resolve the controversy between the parties.

113. For these reasons, ERII requests that the Court enter judgment declaring that ERII is not obligated to defend or indemnify Cory Johnson in connection with the Amex Action because the Policy does not afford coverage for the Amex Action.

**COUNT V**
**Declaratory Judgment – No Duty to Indemnify Any of the Defendants for Amounts Not Constituting Loss Arising from the Siiber, ISS, Key West Actions and Amex Actions**

114. ERII realleges and reincorporates by reference herein all of the foregoing allegations.

115. In the Siiber Action, Siiber seeks the return of $404,185.51 that it allegedly paid to MIFM for goods that MIFM never shipped. Siiber also alleges violations of Ohio Revised Code § 2307.61, and seeks multiplied damages for such alleged violations.

116. In the ISS Action, ISS seeks in part the return of $319,000 that it allegedly wired to MIFM in payment for goods that MIFM never shipped.

117. In the Key West Action, Key West seeks in part the return of nearly $2,800,000 that it allegedly sent to MIFM either directly or through Cutting Edge in payment for goods that never were shipped. MIFM also alleges violations of Rhode Island's RICO statute, and seeks multiplied damages for such alleged violations.

118. In the Amex Action, American Express seeks the return of $947,126.81, constituting the repayment of Defendant Johnson's credit card debt.

119. Clause II(L) of the Policy's D&O Coverage Section defines "**Loss**" in relevant part as "the total amount which any **Insured** becomes legally obligated to pay as a result of any **Claim** made against any **Insured** for **Wrongful Acts**, including, but not limited to, damages . . . judgments, settlements, pre-judgment and post-judgment interest and **Defense Costs**." Clause II(L) further provides that "**Loss** does not include: . . . (2) matters uninsurable under the law pursuant to which this Policy is construed; (3) taxes, fines, penalties imposed by law, or the multiple portion of any multiplied damage award . . . ." The relief sought in the Underlying Actions does not constitute **Loss** under the Policy.

120. An actual and justiciable controversy exists between ERII and Defendants with respect to the parties' rights and obligations under the Policy. In particular, Defendants seek coverage under the Policy for the Underlying Actions and ERII contends that it is not

obligated to indemnify MIFM or Defendants Johnson, Andrews, Holt or Hersey for any relief that constitutes the disgorgement of ill-gotten gains or for the multiple portion of any multiplied damage award, pursuant to the Policy's definition of **Loss**.

121. The entry of a declaratory judgment concerning the application of the definition of **Loss** is necessary and would be effective to resolve the controversy between the parties.

122. For these reasons, ERII requests that the Court enter judgment declaring that ERII is not obligated to indemnify MIFM, Cory Johnson, David Andrews, a/k/a/ David Whitaker, Patrick Holt or Sally Hersey for the disgorgement of ill-gotten gains or for the multiple portion of any multiplied damage award in connection with the Underlying Actions, because such amounts fall outside of the Policy's definition of **Loss**.

WHEREORE, ERII prays as follows:

(a) that the Court enter judgment declaring that the Policy does not afford coverage with respect to the Siiber Action;

(b) that the Court enter judgment declaring that the Policy does not afford coverage for MIFM or Cory Johnson with respect to the ISS and Key West Actions;

(c) that the Court enter judgment declaring that the Policy does not afford coverage for David Andrews / David Whitaker with respect to the ISS and Key West Actions;

(d) that the Court enter judgment declaring that the Policy does not afford coverage with respect to the Amex Action;

(e) that the Court enter judgment declaring that the Policy does not afford indemnity coverage for any of the Defendants for the disgorgement of ill-gotten gains or improper profits or the multiple portion of any multiplied damage award in the Siiber, ISS, Key West or Amex Actions;

(f) that the Court award ERII its costs and reasonable attorneys' fees; and

(g) that the Court grant ERII such other and further relief as the Court may deem appropriate.

Respectfully submitted,

Stephen J. Reid, Jr. (#2811)
BLISH & CAVANAGH, L.L.P.
Commerce Center
30 Exchange Terrace
Providence, R.I. 02903-1765
(401) 831-8900
(401) 751-7542 (fax)

*Attorneys for Plaintiff Executive Risk Indemnity, Inc.*

*Of counsel:*
Michelle A. Kisloff
Joseph A. Bailey III
HOGAN & HARTSON, L.L.P.
555 Thirteenth Street, N.W.
Washington, D.C. 20004-1109
(202) 637-5600
(202) 637-5910 (fax)

Dated: August 18, 2006