PREMIUM BILL

Insured: Mix it For Me.com

Date: 10/10/2005

Producer: DECOTIS INSURANCE ASSOCIATES INC
201 WAYLAND AVE 2ND FL
PROVIDENCE, RI 029060000

Company: Executive Risk Indemnity Inc.

THIS BILLING IS TO BE ATTACHED TO AND FORM A PART OF THE POLICY REFERENCED BELOW.

NOTE: PLEASE RETURN THIS BILL WITH REMITTANCE AND NOTE HEREON ANY CHANGES. BILL WILL BE RECEIPTED AND RETURNED TO YOU PROMPTLY UPON REQUEST.

PLEASE REMIT TO PRODUCER INDICATED ABOVE. PLEASE REFER TO 6803-4755

| EFFECTIVE DATE | POLICY OR CERTIFICATE NUMBER | COVERAGE | | PREMIUM |
|---|---|---|---|---|
| September 28, 2005 | 6803-4755 | PWRSRCE | | $10,000.00 |
| to | | | | |
| September 28, 2006 | | | | |
| | | | | |
| | | | TOTAL | $10,000.00 |
| | | | | |

Form 26-10-0426 (Ed. 2/98)

**Chubb & Son**, div. of Federal Insurance Company
as manager of the member Insurers of the
Chubb Group of Insurance Companies

# POLICYHOLDER DISCLOSURE NOTICE OF TERRORISM INSURANCE COVERAGE

**(for policies with no terrorism exclusion or sublimit)**

You are hereby notified that, under the Terrorism Risk Insurance Act of 2002 (the "Act") effective November 26, 2002, this policy makes available to you insurance for losses arising out of certain acts of international terrorism. Terrorism is defined as any act certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of an air carrier or vessel or the premises of a United States Mission; and to have been committed by an individual or individuals acting on behalf of any foreign person or foreign interest, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

You should know that the insurance provided by your policy for losses caused by acts of terrorism is partially reimbursed by the United States under the formula set forth in the Act. Under this formula, the United States pays 90% of covered terrorism losses that exceed the statutorily established deductible to be paid by the insurance company providing the coverage. The portion of your policy's annual premium that is attributable to insurance for such acts of terrorism is: $ **-0-**.

If you have any questions about this notice, please contact your agent or broker.

**Notice to Purchasers of Employment Practices Liability Coverage or Fiduciary Liability Coverage**

As a purchaser of an Employment Practices Liability Coverage Section and/or a Fiduciary Liability Coverage Section, please note that the Company has the right and duty to defend any Claim (as such term is defined in the Definitions section of each applicable Coverage Section) covered by each applicable Coverage Section, unless such Coverage Section has been amended by written endorsement. Defense counsel for any such Claim shall be selected by the Company from the Company's list of approved defense firms. Please also note that, as a condition precedent to any right to coverage under each applicable Coverage Section, all Claims must be reported to the Company in writing in the manner and within the time provided in the Reporting and Notice provisions of such Coverage Section.

For a list of approved defense firms, please contact your insurance agent or broker, or access such list by using the following internet address:

http://csi.chubb.com/panel_counsel.asp

Please note that the Company reserves the right to modify such list at any time without notice.

**Chubb Group of Insurance Companies**
15 Mountain View Road
Warren, New Jersey 07059

***Power Source*** [sm]
***General Terms and Conditions Section***

**DECLARATIONS**

**EXECUTIVE RISK INDEMNITY INC.**
a stock insurance company, incorporated under the laws of Delaware, herein called the **Company.**

**Policy Number:** 6803-4755

**THE LIABILITY COVERAGE SECTIONS (WHICHEVER ARE PURCHASED) PROVIDE CLAIMS MADE COVERAGE, WHICH APPLIES ONLY TO "CLAIMS" FIRST MADE DURING THE "POLICY PERIOD", OR ANY EXTENDED REPORTING PERIOD. THE LIMIT OF LIABILITY TO PAY DAMAGES OR SETTLEMENTS WILL BE REDUCED AND MAY BE EXHAUSTED UNLESS OTHERWISE PROVIDED HEREIN, BY "DEFENSE COSTS", AND "DEFENSE COSTS" WILL BE APPLIED AGAINST THE DEDUCTIBLE AMOUNT. READ THE ENTIRE POLICY CAREFULLY.**

**Item 1. Parent Corporation:**
Principal Address:

Mix it For Me.com
224 Arlington Ave
Cranston, RI 02920

---

**Item 2. Policy Period:**

(A) From 12:01 A.M. on September 28, 2005
(B) To 12:01 A.M. on September 28, 2006
Local time at the address shown in Item 1.

---

**Item 3.** Combined Maximum Aggregate Limit of Liability for all **Claims** under all **Liability Coverage Sections:**

$2,000,000

---

| **Item 4.** Liability Coverage Sections: | Limit of Liability |
|---|---|
| (a) Directors and Officers Liability Coverage Section Maximum Aggregate Limit of Liability: | $2,000,000 |
| (b) Employment Practices Liability Coverage Section Maximum Aggregate Limit of Liability: | $1,000,000 |
| (c) Fiduciary Liability Coverage Section Maximum Aggregate Limit of Liability: | N/A |
| (d) Miscellaneous Professional Liability Coverage Section Maximum Aggregate Limit of Liability: | Not Covered |
| (e) Internet Liability Coverage Section Maximum Aggregate Limit of Liability: | Not Covered |

---

**Chubb Group of Insurance Companies**
15 Mountain View Road
Warren, New Jersey 07059

***Power Source***[sm]
***General Terms and Conditions Section***

Item 5. Liability Coverage Options

(a) Directors and Officers Liability Coverage Section, Insuring Clause (C), Corporate Liability Coverage is ☒ is Not ☐ available under this Policy.

(b) Directors and Officers Coverage Section, Section IV, Additional Limit of Liability Dedicated for Executives is ☐ is Not ☒ available under this Policy.

(c) Employment Practices Liability Coverage Section, Insuring Clause (B), Third Party Liability Coverage is ☒ is Not ☐ available under this Policy with a Limit of Liability $1,000,000.00

(d) Fiduciary Liability Coverage Section, Insuring Clause (B), Voluntary Settlement Program Coverage is ☐ is Not ☒ available under this Policy.

(e) Fiduciary Liability Coverage Section, Section IV, Defense Outside the Limits of Liability Coverage Coverage is ☐ is Not ☒ available under this Policy.

| Item 6. Non-Liability Coverage Sections: | Limit of Liability |
|---|---|
| (a) Crime Coverage Section, Insuring Clause (A), Employee Theft: | Not Covered |
| (b) Crime Coverage Section, Insuring Clause (B), Premises: | Not Covered |
| (c) Crime Coverage Section, Insuring Clause (C), In Transit: | Not Covered |
| (d) Crime Coverage Section, Insuring Clause (D), Forgery: | Not Covered |
| (e) Crime Coverage Section, Insuring Clause (E), Computer Fraud: | Not Covered |
| (f) Crime Coverage Section, Insuring Clause (F), Funds Transfer Fraud | Not Covered |
| (g) Crime Coverage Section, Insuring Clause (G), Money Orders andCounterfeit Currency Fraud: | Not Covered |
| (h) Crime Coverage Section, Insuring Clause (H), Credit Card Fraud: | Not Covered |
| (i) Crime Coverage Section, Insuring Clause (I), Client Coverage: | Not Covered |
| (j) Crime Coverage Section, Insuring Clause (J), Expense Coverage: | Not Covered |
| (k) Kidnap/Ransom and Extortion Section, Insuring Clause (A), Kidnapping and Extortion Threat Coverage: | Not Covered |
| (l) Kidnap/Ransom and Extortion Coverage Section, Insuring Clause (B), Custody Coverage: | Not Covered |
| (m) Kidnap/Ransom and Extortion Coverage Section, Insuring Clause (C), Expense Coverage: | Not Covered |
| (n) Kidnap/Ransom and Extortion Coverage Section, Insuring Clause (D), Accidental Loss Coverage: | Not Covered |

CHUBB
**Chubb Group of Insurance Companies**
15 Mountain View Road
Warren, New Jersey 07059

***Power Source*[sm]**
***General Terms and Conditions Section***

---

| | |
|---|---|
| (o) Kidnap/Ransom and Extortion Coverage Section Insuring Clause (D), Accidental Loss Coverage, **Loss of Life Benefit Amount**: | Not Covered |
| (p) Kidnap/Ransom and Extortion Coverage Section, Insuring Clause (D), Accidental Loss Coverage, Mutilation Benefit Amount: 25% of the **Loss of Life Benefit Amount.** | |
| (q) Kidnap/Ransom and Extortion Coverage Section, Insuring Clause (D), Accidental Loss Coverage, All Other Accidental Loss Benefit Amount: 100% of the **Loss of Life Benefit Amount.** | |
| (r) Kidnap/Ransom and Extortion Coverage Section, Insuring Clause (E), Legal Liability Costs Coverage: | Not Covered |
| (s) Workplace Violence Expense Coverage: | Not Covered |

---

**Item 7.** Non-Liability Coverage Options

(a) Crime Coverage Section, Coverage under the selected Insuring Clauses (A through J) applies as:

Loss Sustained ☐ Or Loss Discovered ☐

(b) Kidnap/Ransom and Extortion Coverage Section, Insuring Clause (F), Emergency Political Repatriation Expense Coverage is ☐ is Not ☒ Available under this Policy, with a Limit of Liability of: Not Covered

---

**Item 8.** Deductible Amounts:

| | |
|---|---|
| (a) Directors and Officers Liability Coverage Section, Insuring Clause (A), Individual Non-Indemnifiable Liability Coverage: | $0.00 |
| (b) Directors and Officers Liability Coverage Section, Insuring Clause (B), Individual Indemnified Liability Coverage: | $25,000.00 |
| (c) Directors and Officers Liability Coverage Section, Insuring Clause (C), Corporate Liability Coverage: | $25,000.00 |
| (d) Employment Practices Liability Coverage Section, Insuring Clause (A), Employment Practices Liability Coverage: | $10,000.00 |
| (e) Employment Practices Liability Coverage Section, Insuring Clause (B), Third Party Liability Coverage: | $10,000.00 |
| (f) Fiduciary Liability Coverage: | Not Covered |

Chubb Group of Insurance Companies
15 Mountain View Road
Warren, New Jersey 07059

***Power Source*** [sm]
***General Terms and Conditions Section***

| | |
|---|---|
| (g) Fiduciary Liability Coverage Section, Insuring Clause (B), Voluntary Settlement Program Coverage: | Not Covered |
| (h) Miscellaneous Professional Liability Coverage Section: | Not Covered |
| (i) Internet Liability Coverage Section: | Not Covered |
| (j) Crime Coverage Section, Insuring Clause (A), Employee Theft: | Not Covered |
| (k) Crime Coverage Section, Insuring Clause (B), Premises: | Not Covered |
| (l) Crime Coverage Section, Insuring Clause (C), In Transit: | Not Covered |
| (m) Crime Coverage Section, Insuring Clause (D), Forgery: | Not Covered |
| (n) Crime Coverage Section, Insuring Clause (E), Computer Fraud: | Not Covered |
| (o) Crime Coverage Section, Insuring Clause (F), Funds Transfer Fraud: | Not Covered |
| (p) Crime Coverage Section, Insuring Clause (G), Money Order and Counterfeit Currency Fraud Deductible: | Not Covered |
| (q) Crime Coverage Section, Insuring Clause (H), Credit Card Fraud: | Not Covered |
| (r) Crime Coverage Section, Insuring Clause (I), Client Coverage: | Not Covered |
| (s) Kidnap & Ransom Coverage: | Not Covered |
| (t) Workplace Violence Expense Coverage: | Not Covered |

**Item 9.** Extended Reporting Period:

| (A) Additional Period: | | (B) Additional Premium: | |
|---|---|---|---|
| 365 | Day(s) | 100 | % of Annual Premium |
| N/A | Year(s) | N/A | % of Annual Premium |
| N/A | Year(s) | N/A | % of Annual Premium |

**Item 10**. Pending or Prior Litigation Dates:

| | Date |
|---|---|
| (a) Directors and Officers Liability Coverage Section Insuring Clauses (A) and (B): | 9/28/05 |
| (b) Directors and Officers Liability Coverage Section Insuring Clause (C): | 9/28/05 |
| (c) Employment Practices Liability Coverage Section Insuring Clause (A): | 9/28/05 |
| (d) Employment Practices Liability Coverage Section Insuring Clause (B): | 9/28/05 |
| (e) Fiduciary Liability Coverage Section Insuring Clause (A): | N/A |
| (f) Fiduciary Liability Coverage Section Insuring Clause (B): | N/A |
| (g) Miscellaneous Professional Liability Coverage Section: | N/A |
| (h) Internet Liability Coverage Section: | N/A |

Chubb Group of Insurance Companies
15 Mountain View Road
Warren, New Jersey 07059

**Power Source^sm**
**General Terms and Conditions Section**

**Item 11.** Retroactive Dates: Date

(a) Miscellaneous Professional Liability Coverage Section: N/A

(b) Internet Liability Coverage Section: N/A

**Item 12.** Professional Services under the Miscellaneous Professional Services Liability Coverage Section:

N/A

**Item 13.** Internet Site(s) under the Internet Liability Coverage Section:

N/A

**Item 14.** Other Covered Communications under the Internet Liability Coverage Section:

N/A

**Item 15.** Termination of Prior Policies:

X New Business

**Item 16.** Policy Form and Endorsement Editions Attached at Issuance:

C31767 (4/01 ed.)
14-02-4205 (4/01 ed.)
D33522 (4/04 ed.)
14-02-6603 (4/02 ed.)
14-02-6224 (10/01 ed.)

Chubb Group of Insurance Companies
15 Mountain View Road
Warren, New Jersey 07059

**Power Source[sm]**
***General Terms and Conditions Section***

In witness whereof, the Company issuing this Policy has caused this Policy to be signed by its authorized officers, but it shall not be valid unless also signed by a duly authorized representative of the Company.

**EXECUTIVE RISK INDEMNITY INC.**

Secretary

President

10/10/05

Date

Authorized Representative

CHUBB

**_Power Source_**[sm]
**_General Terms and Conditions Section_**

**In consideration of payment of the premium and subject to the Declarations and the limitations, conditions, provisions and other terms of this Policy, the Company and the Insureds agree as follows:**

## I. TERMS AND CONDITIONS

Except for these General Terms and Conditions or unless stated to the contrary in any Coverage Section of this Policy, the terms and conditions of each Coverage Section apply only to that Coverage Section. If any provision in these General Terms and Conditions is inconsistent or in conflict with the terms and conditions of any Coverage Section, the terms and conditions of such Coverage Section shall control for purposes of that Coverage Section. Any defined term referenced in these General Terms and Conditions but defined in a Coverage Section shall, for purposes of coverage under that Coverage Section, have the meaning set forth in that Coverage Section.

## II. GENERAL DEFINITIONS

(A) **Anniversary Date** means that date and time exactly one (1) year after the date and time set forth in Item 2(A) of the Declarations, and each succeeding date and time exactly one (1) year after the previous **Anniversary Date**.

(B) **Claim** shall have the meaning ascribed to that term in each **Liability Coverage Section**.

(C) **Coverage Event** means the event or loss which must occur, be sustained or discovered in order to invoke coverage under each **Non-Liability Coverage Section**.

(D) **Debtor in Possession** means a debtor in possession as such term is used in Chapter 11 of the United States of America Bankruptcy Code.

(E) **Defense Costs** means that part of **Loss** consisting of reasonable costs, charges, fees (including but not limited to attorneys' fees and experts' fees) and expenses (other than regular or overtime wages, salaries or fees of the directors, officers or employees of the **Insured Organization**) incurred in defending any **Claim** and the premium for appeal, attachment or similar bonds.

(F) **Financial Impairment** means the status of an **Insured Organization** resulting from:

(1) the appointment by any state or federal official, agency or court of any receiver, conservator, liquidator, trustee, rehabilitator or similar official to take control of, supervise, manage or liquidate such **Insured Organization**; or

(2) such **Insured Organization** becoming a **Debtor in Possession**.

(G) **Insured** means all organizations, plans and natural persons defined as **Insureds** in each Coverage Section.

(H) **Insured Organization** means the **Parent Corporation** and any **Subsidiary** created at any time or any **Subsidiary** acquired on or before the inception date as set forth in Item 2(A) of the Declarations, or subject to Section XI Changes in Exposure of these General Terms and

Conditions, during the **Policy Period**. **Insured Organization** shall also mean any such entity as a **Debtor in Possession** or an equivalent status under the law of any other country.

(I) **Insured Person** shall have the meaning ascribed to that term in each Coverage Section. Solely with respect to any **Liability Coverage Section**, coverage for an **Insured Person** shall also include coverage for:

(1) the lawful spouse of such **Insured Person**, if named as a co-defendant with such **Insured Person** solely by reason of such spouse's status as a spouse, or such spouse's ownership interest in property, which is sought by the claimant as recovery for an alleged **Wrongful Act** of such **Insured Person**; and

(2) in the event of the death, incapacity or bankruptcy of an **Insured Person**, the estate, heirs, legal representatives or assigns of such **Insured Person**;

but any such coverage shall apply only with respect to a **Wrongful Act** of such **Insured Person**. All terms and conditions of this Policy, including without limitation, the Deductible Amount applicable to **Loss** incurred by the **Insured Person**, shall also apply to loss incurred by such spouses, estates, heirs, legal representatives and assigns of such **Insured Person**.

(J) **Liability Coverage Section** means the Directors & Officers Liability, Employment Practices Liability, Fiduciary Liability, Miscellaneous Professional Liability and the Internet Liability Coverage Sections of this Policy, if purchased as set forth in Item 4 of the Declarations.

(K) **Loss**:

(1) with respect to any **Liability Coverage Section**, shall have the meaning ascribed to that term in such Coverage Section; or

(2) with respect to any **Non-Liability Coverage Section**, means the total amount covered under such Coverage Section as a result of any **Coverage Event**.

(L) **Non-Liability Coverage Section** means the Crime, Kidnap/Ransom and Extortion and Workplace Violence Expense Coverage Sections of this Policy, if purchased as set forth in Item 6 of the Declarations.

(M) **Parent Corporation** means the entity named in Item 1 of the Declarations.

(N) **Policy Period** means the period of time set forth in Item 2 of the Declarations, subject to any prior termination in accordance with Section XIX Termination of Policy of these General Terms and Conditions.

(O) **Policy Year** means the period, within the **Policy Period**, from the date and time set forth in Item 2(A) of the Declarations to the first **Anniversary Date**, or the period from an **Anniversary Date** to its next succeeding **Anniversary Date**, subject to any prior termination as set forth in Section XIX Termination of Policy of these General Terms and Conditions.

(P) **Potential Employment Claim** means a complaint or allegation of a **Wrongful Act** in connection with **Discrimination**, **Harassment**, **Retaliation**, **Workplace Tort** or **Wrongful Employment Decision** that does not constitute an **Employment Claim** but which may subsequently give rise to an **Employment Claim** brought by or on behalf of an **Insured Person** that is lodged with the **Insured Organization's** human resource department or other department that provides a

function similar to a human resource department. Solely with respect to this Definition (P), the terms **Wrongful Act**, **Discrimination**, **Harassment**, **Retaliation**, **Workplace Tort**, **Wrongful Employment Decision**, **Employment Claim** and **Insured Person** shall have the meaning ascribed to them in the Employment Practices Liability Coverage Section.

(Q) **Potential Third Party Claim** means a complaint or allegation of a **Wrongful Act** in connection with **Third Party Discrimination or Sexual Harassment** that does not constitute a **Third Party Claim** but which may subsequently give rise to a **Third Party Claim** brought by or on behalf of a **Third Party** that is lodged with the **Insured Organization's** legal department or an individual responsible to receive such complaints or allegations. Solely with respect to this Definition (Q), the terms **Wrongful Act**, **Third Party Discrimination or Sexual Harassment**, **Third Party Claim** or **Third Party** shall have the meaning ascribed to them in the Employment Practices Liability Coverage Section.

(R) **Related Claims** means all **Claims** for **Wrongful Acts** based upon, arising from, or in consequence of the same or related facts, circumstances, situations, transactions or events or the same or related series of facts, circumstances, situations, transactions or events.

(S) **Subsidiary** means:

(1) any entity during any time in which the **Parent Corporation** owns or controls, directly or through one or more **Subsidiaries**, the right to elect or appoint more than fifty percent (50%) of such entity's directors or trustees;

(2) any limited liability company during any time in which the **Parent Corporation** owns or controls, directly or through one or more **Subsidiaries**, the right to elect, appoint or designate more than fifty percent (50%) of such entity's managers;

(3) any corporation during any time in which the **Parent Corporation** owns, directly or through one or more **Subsidiaries**, exactly fifty percent (50%) of the issued and outstanding voting stock and which, pursuant to a written agreement with the owner(s) of the remaining issued and outstanding voting stock of such corporation, the **Parent Corporation** solely controls the management and operation of such corporation ("Controlled Joint Venture"); and

(4) any foundation, charitable trust or political action committee during any time in which such entity or organization is controlled by the **Parent Corporation**.

(T) **Wrongful Act** shall have the meaning ascribed to that term in each **Liability Coverage Section**.

---

**III. TERRITORY**

Coverage shall extend anywhere in the world.

---

**IV. EXTENDED REPORTING PERIOD**

(A) If any **Liability Coverage Section** is either terminated or not renewed for any reason other than nonpayment of premium, any **Insured Organization** or any **Insured Person** shall have the right to purchase an Extended Reporting Period for one of the periods set forth in Item 9(A) of the

Declarations. This right to purchase an Extended Reporting Period shall lapse unless written notice of the desired Extended Reporting Period, together with payment of the additional applicable premium due as set forth in Item 9(B) of the Declarations is received by the **Company** within sixty (60) days after the end of the Policy Period.

(B) If the Extended Reporting Period is purchased, then coverage otherwise afforded by such **Liability Coverage Section** will be extended to apply to **Loss** from **Claims** first made during such Extended Reporting Period but only for **Wrongful Acts** committed or allegedly committed before the end of the **Policy Period** or the date of any conversion of coverage described in Section XI Changes in Exposure of these General Terms and Conditions, whichever is earlier. The entire additional premium for the Extended Reporting Period shall be deemed fully earned at the inception of such Extended Reporting Period. The Limit of Liability for the Extended Reporting Period shall be part of and not in addition to the applicable Limits of Liability for the **Policy Year** immediately preceding the expiration of the **Policy Period**.

---

## V. LIMIT OF LIABILITY

(A) Solely with respect to all **Liability Coverage Sections**:

(1) If the combined maximum aggregate Limit of Liability for all **Liability Coverage Sections** is purchased, as set forth in Item 3 of the Declarations, such amount shall be the combined maximum aggregate liability of the **Company** for all **Loss** from all **Claims** first made during each **Policy Year** under all **Liability Coverage Sections** combined, regardless of the number of **Claims**; provided that, the maximum aggregate liability of the **Company** for all **Loss** from all **Claims** first made during each **Policy Year** under each **Liability Coverage Section** shall not exceed the respective maximum aggregate Limit of Liability as set forth in Item 4 of the Declarations, regardless of the number of **Claims**. If the maximum aggregate Limit of Liability of any **Liability Coverage Section** as set forth in Item 4 of the Declarations, is less than the combined maximum aggregate Limit of Liability for all **Liability Coverage Sections** as set forth in Item 3 of the Declarations, such lesser limit shall be a sublimit and such amount shall be part of, and not in addition to, the combined maximum aggregate Limit of Liability for all **Liability Coverage Sections** as set forth in Item 3 of the Declarations.

(2) If the combined maximum aggregate Limit of Liability for all **Liability Coverage Sections** is not purchased, as set forth in Item 3 of the Declarations, the maximum aggregate liability of the **Company** for all **Loss** from all **Claims** first made during each **Policy Year** under each **Liability Coverage Section** shall be the respective maximum aggregate Limit of Liability as set forth in Item 4 of the Declarations, regardless of the number of **Claims**.

(3) Except as otherwise expressly provided in any **Liability Coverage Section**, **Defense Costs** are part of and not in addition to the applicable maximum aggregate Limit of Liability as set forth in Item 4 of the Declarations and payment by the **Company** of **Defense Costs** shall reduce and may exhaust such Limit(s) of Liability.

(B) Solely with respect to each **Non-Liability Coverage Section**, the **Company's** maximum liability shall be the respective Limit(s) of Liability described in the applicable **Non-Liability Coverage Section**.

---

**VI. DEDUCTIBLE AMOUNT**

(A) Solely with respect to any **Liability Coverage Section**:

(1) The **Company's** liability with respect to **Loss** arising from each **Claim** covered under one or more **Liability Coverage Sections** shall apply only to that part of **Loss** which is in excess of the applicable Deductible Amount set forth in Item 8 of the Declarations. If different parts of a single **Claim** are subject to different Deductible Amounts, the applicable Deductible Amounts will be applied separately to each part of such **Claim**, but the sum of such Deductible Amounts shall not exceed the largest applicable Deductible Amount. Such Deductible Amount shall be borne by the **Insureds** uninsured and at their own risk.

(2) No Deductible Amount shall apply to **Loss** incurred by any **Insured Person** for which the **Insured Organization** is not permitted by common or statutory law to indemnify, or is permitted or required to indemnify, but is not able to do so by reason of **Financial Impairment**.

(3) If the **Insured Organization** is permitted or required by common or statutory law to indemnify the **Insured Persons** for any **Loss**, or to advance **Defense Costs** on their behalf, under any **Liability Coverage Section** and fails or refuses to do so other than for reasons of **Financial Impairment**, then the **Insured Organization** shall reimburse and hold harmless the **Company** for the **Company's** payment or advancement of such **Loss** up to the amount of the applicable Deductible Amount.

(4) In the event that:

(a) a final adjudication with prejudice pursuant to a trial, motion to dismiss or a motion for summary judgment of any **Claim**; or

(b) a complete and final settlement with prejudice of any **Claim**;

establishes that none of the **Insureds** in such **Claim** are liable for any **Loss**, no Deductible Amount shall apply to **Defense Costs** incurred in connection with any such **Claim**, and the **Company** will reimburse the **Insureds** for any covered **Defense Costs** paid by the **Insureds** within the Deductible Amount otherwise applicable to such **Claim**; provided that this paragraph (4) shall not apply to any (i) **Employment Claim** or **Third Party Claim** which is not a class action, or (ii) **Professional Services Claim** (as such terms are defined in the applicable **Liability Coverage Sections**).

(B) Solely with respect to any **Non-Liability Coverage Section**:

(1) The **Company** shall pay loss that exceeds the amount of recoveries made prior to such payment, less the Deductible Amount set forth in Item 8 of the Declarations.

(2) If the **Insured** receives payment under another policy or bond, after applying a deductible, for loss also covered hereunder, then the Deductible Amount set forth in Item 8 of the Declarations shall be reduced by the deductible previously applied to such loss.

**VII. REPORTING**

(A) Solely with respect to any **Liability Coverage Section**:

(1) Any **Insured** shall, as a condition precedent to exercising their rights under any **Liability Coverage Section**, give to the **Company** written notice as soon as practicable of any **Claim**.

(2) If during the **Policy Period**, or any applicable Extended Reporting Period, an **Insured** becomes aware of a **Potential Employment Claim** or **Potential Third Party Claim** which could give rise to any **Employment Claim** or **Third Party Claim** (as such terms are defined in the Employment Practices Liability Coverage Section) or becomes aware of circumstances which could give rise to any **Claim**, other than an **Employment Claim** or a **Third Party Claim** (as such terms are defined in the Employment Practices Liability Coverage Section), and gives written notice of such **Potential Employment Claim, Potential Third Party Claim** or circumstances to the **Company** as soon as practicable thereafter but before the expiration or cancelation of this Policy, then any **Claim** subsequently arising from such **Potential Employment Claim, Potential Third Party Claim** or circumstances shall be considered to have been made against the **Insured** during the **Policy Year** in which the **Potential Employment Claim, Potential Third Party Claim** or circumstances were first reported to the **Company**.

(3) All **Insureds** shall, as a condition precedent to exercising their rights under this Policy, give to the **Company** such information and cooperation as it may reasonably require, including but not limited to a description of the **Claim, Potential Employment Claim, Potential, Third Party Claim** or circumstances, the nature of the alleged **Wrongful Act**, the nature of the alleged or potential damage, the names of the actual or potential claimants, and the manner in which such **Insured** first became aware of the **Claim, Potential Employment Claim, Potential Third Party Claim** or circumstances.

(4) All **Related Claims** will be treated as a single **Claim** made when the earliest of such **Related Claims** was first made, or when the earliest of such **Related Claims** is treated as having been made in accordance with paragraphs (2) and (3) above.

(B) Solely with respect to any **Non-Liability Coverage Section**, reporting of a **Coverage Event** shall be in accordance with the applicable Proof of Loss and Legal Proceedings Section of each Coverage Section.

---

**VIII. NOTICE**

(A) Any notice to the **Company** with respect to any Coverage Section shall designate the Coverage Section under which the notice is being given and shall be treated as notice under only the Coverage Section(s) so designated.

(B) All notices to the **Company** under this Policy of **Claims, Potential Employment Claims, Potential Third Party Claims** or circumstances under any **Liability Coverage Section** or of **Coverage Events** under any **Non-Liability Coverage Section** shall be given in writing addressed to:

**Attn: Claims Department**
Chubb Group of Insurance Companies
82 Hopmeadow St.
Simsbury, CT 06070-7683

(C) All other notices to the **Company** under this Policy shall be given in writing addressed to:

**Attn: Underwriting**
Chubb Group of Insurance Companies
82 Hopmeadow St.
Simsbury, CT 06070-7683

(D) Any such notice shall be effective on the date of receipt by the **Company** at such address.

---

## IX. DEFENSE AND SETTLEMENT

(A) Solely with respect to any **Liability Coverage Section**:

(1) The **Company** shall have the right and duty to defend any **Claim** covered by this Policy. Coverage shall apply even if any of the allegations are groundless, false or fraudulent. The **Company's** duty to defend any **Claim** shall cease upon exhaustion of the applicable Limit of Liability.

(2) The **Company** may make any investigation it deems necessary and may, with the consent of the **Insured**, make any settlement of any **Claim** it deems expedient. If any **Insured** withholds consent to any settlement acceptable to the claimant in accordance with the **Company's** recommendation (a "Proposed Settlement"), Section VI Deductible Amount (A)(4) shall not apply and the **Company's** liability for all **Loss**, including **Defense Costs**, from such **Claim** shall not exceed:

(a) the amount of the Proposed Settlement plus **Defense Costs** incurred up to the date of the **Insured's** refusal to consent to Proposed Settlement of such **Claim**; plus;

(b) seventy percent (70%) of any **Loss**, including **Defense Costs**, in excess of the amount referenced in paragraph (a) above, incurred in connection with such **Claim**; subject in all events to the applicable Deductible Amount and the available Limit of Liability set forth in the Declarations. The remaining thirty percent (30%) of any **Loss**, including **Defense Costs**, in excess of the amount referenced in paragraph (a) above will be borne by the **Insured** uninsured and at its own risk, notwithstanding anything to the contrary contained in Section X Allocation.

(3) No **Insured** shall settle any **Claim**, incur any **Defense Costs**, or otherwise assume any contractual obligation or admit any liability with respect to any **Claim** without the **Company's** written consent, which shall not be unreasonably withheld. The **Company** shall not be liable for any settlement, **Defense Costs**, assumed obligation or admission to which it has not consented.

(4) The **Company** will have no obligation to pay **Loss**, including **Defense Costs**, or to defend or continue to defend any **Claim** after the **Company's** applicable Limit of Liability with respect to such **Claim** has been exhausted by the payment of **Loss**. If the **Company's** Limit of Liability is exhausted by the payment of **Loss** prior to the expiration of this Policy, the Policy premium will be deemed fully earned.

(5) If the combined maximum aggregate Limit of Liability is purchased as set forth in Item 3 of the Declarations, then the **Company** will have no obligation to pay **Loss**, including **Defense Costs**, or to defend or continue to defend any **Claim** after the **Company's** combined maximum aggregate Limit of Liability has been exhausted by the payment of **Loss**. If the **Company's** combined maximum aggregate Limit of Liability is exhausted by the payment of **Loss** prior to the expiration of this Policy, the Policy premium will be deemed fully earned.

(B) With respect to all Coverage Sections:

The **Insureds** agree to provide the **Company** with all information, assistance and cooperation which the **Company** reasonably requests and agree they will do nothing that may prejudice the **Company's** position or its potential or actual rights of recovery.

---

## X. ALLOCATION

If, in any **Claim** under a **Liability Coverage Section**, the **Insureds** who are afforded coverage for such **Claim** incur an amount consisting of both **Loss** that is covered by this Policy and also loss that is not covered by this Policy because such **Claim** includes both covered and uncovered matters or covered and uncovered parties, then coverage shall apply as follows:

(1) **Defense Costs**: one hundred percent (100%) of reasonable and necessary **Defense Costs** incurred by such **Insured** from such **Claim** will be considered covered **Loss**; and

(2) loss other than **Defense Costs**: all remaining loss incurred by such **Insured** from such **Claim** will be allocated between covered **Loss** and uncovered loss based upon the relative legal exposures of the parties to such matters.

---

## XI. CHANGES IN EXPOSURE

### (A) Acquisition of Another Organization

(1) If any **Insured Organization** acquires another entity or merges with another entity (each an "Acquired Organization") such that the **Insured Organization** is the surviving entity, and if as a result of such acquisition or merger the Acquired Organization would otherwise become a **Subsidiary**, then coverage shall be provided for such Acquired Organization and its **Insureds**, with respect to any:

(a) **Liability Coverage Section**: solely for **Wrongful Acts** committed or allegedly committed after the effective date of such event; or

(b) **Non-Liability Coverage Section**: after the effective date of such event, pursuant to the Liability for Prior Losses Section of any such **Non-Liability Coverage Section**.

(2) If, at the time of an event described in paragraph (1) above:

(a) the assets under management by, or the assets of, the Acquired Organization exceed twenty-five percent (25%) of the total assets under management by or the total assets of, the **Insured Organization** as reflected in the **Parent Corporation's** then most recent audited consolidated financial statements; or

(b) solely with respect to the Employment Practices Liability Coverage Section, if purchased as set forth in Item 4 of the Declarations, the total number of employees of the Acquired Organization exceeds twenty-five percent (25%) of the total number of employees of the **Insured Organization** immediately prior to such event;

then the **Parent Corporation** shall provide to the **Company** written notice of the event containing full details thereof, as soon as practicable, and the **Company**, in its sole discretion, may require additional terms, conditions and limitations of coverage and additional premium shall be paid.

(B) **Cessation of Subsidiaries**

If any **Subsidiary** ceases to be a **Subsidiary** before or during the **Policy Period**, then with respect to any:

(1) **Liability Coverage Section**: coverage under this Policy shall continue for such **Subsidiary** and its **Insureds** until the expiration of this Policy, but solely for **Claims** for **Wrongful Acts** committed or allegedly committed prior to the effective date of such cessation; or

(2) **Non-Liability Coverage Sections**: such **Subsidiary** and its **Insureds** cease to be **Insureds** as of the effective date of such cessation, and coverage under this Policy shall apply as provided in such **Non-Liability Coverage Section**.

(C) **Conversion of Coverage under Certain Circumstances**

If, during the **Policy Period**, any of the following events occur:

(1) the acquisition of all or substantially all of the **Parent Corporation's** assets, by another organization, person or group of organizations or persons acting in concert, or the merger or consolidation of the **Parent Corporation** into or with another entity such that the **Parent Corporation** is not the surviving entity; or

(2) another organization, person or group of organizations or persons acting in concert acquires securities or voting rights which results in ownership or voting control by the other organization(s) or person(s) of more than fifty percent (50%) of the outstanding securities representing the present right to vote for the election of directors, trustees, members of the Board of Managers or management committee members of the **Parent Corporation**;

coverage under this Policy shall, with respect to:

(a) any **Liability Coverage Section**: continue until the expiration of this Policy, solely for **Claims** for **Wrongful Acts** committed or allegedly committed prior to such event;

(b) the Crime Coverage Section: terminate subject to Exclusions (H) and (I) of such Coverage Section;

(c) the Kidnap/Ransom and Extortion Coverage Section: terminate subject to Exclusion (10) of such Coverage Section; or

(d) and the Workplace Violence Coverage Section: terminate subject to Exclusion (E) of such Coverage Section.

The **Parent Corporation** shall give written notice of such event to the **Company** as soon as practicable together with such information as the **Company** may require, and the entire premium for this Policy will be deemed fully earned as of such event.

---

## XII. REPRESENTATIONS AND SEVERABILITY

(A) In granting coverage to the **Insureds** under this Policy, the **Company** has relied upon the declarations and statements in the written application(s) for this Policy. Such declarations and statements are the basis of the coverage under this Policy and shall be considered as incorporated in and constituting part of this Policy.

(B) Solely with respect to any **Liability Coverage Section(s)**, any written application(s) for coverage shall be construed as a separate application(s) for coverage by each **Insured Person**. With respect to the declarations and statements in such application(s):

(1) no fact pertaining to or knowledge possessed by any **Insured Person** shall be imputed to any other **Insured Person** for the purpose of determining if coverage is available; and

(2) only facts pertaining to and knowledge possessed by the Chief Financial Officer, President, Chief Executive Officer or Chairperson of any **Insured Organization** or any other individual signing such application(s) shall be imputed to any **Insured Organization** for the purpose of determining if coverage is available.

---

## XIII. VALUATION AND FOREIGN CURRENCY

All premiums, limits, deductibles, loss and other amounts under this Policy are expressed and payable in the currency of the United States of America. Except as otherwise provided in any Coverage Section, if a judgment is rendered, a settlement is denominated or any element of loss under this Policy is stated in a currency other than United States of America dollars, payment under this Policy shall be made in United States of America dollars at the rate of exchange published in *The Wall Street Journal* on the date the final judgment is reached, the amount of the settlement is agreed upon or any element of loss is due, respectively.

## XIV. SUBROGATION

In the event of any payment under this Policy, the **Company** shall be subrogated to the extent of such payment to all the **Insured's** rights of recovery, and such **Insured** shall execute all papers required and shall do everything necessary to secure and preserve such rights, including the execution of such documents necessary to enable the **Company** effectively to bring suit or otherwise pursue subrogation rights in the name of such **Insured**.

## XV. RECOVERIES

(A) Recoveries of loss with respect to any **Claim** or **Coverage Event**, whether effected by the **Company** or by an **Insured**, less the cost of recovery, shall be distributed as follows:

(1) first, to an **Insured** for the amount of such loss, otherwise covered, in excess of the applicable Limits of Liability;

(2) second, to the **Company** for the amount of such loss paid to an **Insured** as covered **Loss**;

(3) third, to an **Insured** for the Deductible Amount applicable to such loss;

(4) fourth, to an **Insured** for the amount of such loss excluded under this Policy.

(B) Recovery from reinsurance or indemnity of the **Company** shall not be deemed a recovery hereunder.

## XVI. ACTION AGAINST THE COMPANY

No action may be taken against the **Company** unless, as a condition precedent thereto, there shall have been full compliance with all the terms of this Policy. No person or entity shall have any right under this Policy to join the **Company** as a party to any action against any **Insured** to determine such **Insured's** liability nor shall the **Company** be impleaded by such **Insured** or legal representatives of such **Insured**.

## XVII. PARENT CORPORATION RIGHTS AND OBLIGATIONS

By acceptance of this Policy, the **Parent Corporation** is considered the sole agent of and will act on behalf of each **Insured** with respect to: the payment of premiums and the receiving of any return premiums that may become due under this Policy; the negotiation, agreement to and acceptance of endorsements; the giving or receiving of any notice, including Notice of Claim or Proof of Loss (except the giving of notice to apply for the Extended Reporting Period); the adjustment of the amount of **Loss** submitted; the giving of written notice of termination and the receipt or enforcement of payment of a **Loss**; and the **Parent Corporation** shall be responsible for application of any such payment, as provided for in this Policy, and each **Insured** agrees that the **Parent Corporation** shall act on their behalf.

**XVIII. ALTERATION AND ASSIGNMENT**

No change in, modification of, or assignment of interest under this Policy shall be effective except when made by written endorsement to this Policy which is signed by an authorized employee of Chubb & Son, a division of Federal Insurance Company.

---

**XIX. TERMINATION OF POLICY**

(A) This Policy shall terminate at the earliest of the following times:

(1) upon receipt by the **Company** of written notice of termination from the **Parent Corporation**; provided that this Policy may not be terminated by the **Parent Corporation** after the effective date of any event described in Section XI Changes in Exposure (C) of these General Terms and Conditions;

(2) upon expiration of the **Policy Period** as set forth in Item 2(B) of the Declarations;

(3) twenty (20) days after receipt by the **Parent Corporation** of a written notice of termination from the **Company** based upon non-payment of premium, unless the premium is paid within such twenty (20) day period; or

(4) at such other time as may be agreed upon by the **Company** and the **Parent Corporation**.

(B) The **Company** shall refund the unearned premium computed at customary short rates if this Policy is terminated by the **Parent Corporation**. Under any other circumstances the refund shall be computed pro rata. Payment or tender of any unearned premium by the **Company** shall not be a condition precedent to the effectiveness of such termination, but such payment shall be made as soon as practicable.

---

**XX. TERMINATION OF PRIOR BONDS OR POLICIES**

Any prior bonds or policies issued by the **Company** or its affiliates and specified in Item 15 of the Declarations shall terminate, if not already terminated, as of the inception of this Policy.

---

**XXI. BANKRUPTCY**

Bankruptcy or insolvency of any **Insured** shall not relieve the **Company** of its obligations nor deprive the **Company** of its rights or defenses under this Policy.

---

**XXII. HEADINGS**

The descriptions in the headings and sub-headings of this Policy are solely for convenience, and form no part of the terms and conditions of coverage.

---

**ENDORSEMENT**

Coverage Section: Power Source General Terms and Conditions

Effective date of
this endorsement: September 28, 2005

Company: Executive Risk Indemnity Inc.

Endorsement No. 1

To be attached to and
form a part of Policy No. 6803-4755

Issued to: Mix it For Me.com

---

**RHODE ISLAND AMENDATORY ENDORSEMENT**
**TO GENERAL TERMS & CONDITIONS SECTION**

In consideration of the premium charged, it is agreed that:

1. The Company has no obligation to renew the Policy. If the Company does not renew the Policy, it will give, mail or deliver at least thirty (30) days advance written notice to the Parent Corporation, with a copy to the agent of record, if any, at their last addresses known to the Company. If the notice is given, mailed or delivered less than thirty (30) days before the Policy expiration date, coverage will remain in effect until thirty (30) days after notice is given, mailed or delivered. Earned premium for any period of coverage that extends beyond the expiration date will be calculated pro-rata based upon the premium of the previous year.

2. If the Company provides notice of non-renewal, and thereafter extends the Policy for ninety (90) days or less, an additional notice of non-renewal shall not be required with respect to the extension.

3. The Company may condition renewal of the Policy upon a premium increase, change in the deductible, or reduction in the Limit of Liability or coverage by delivering or mailing at least thirty (30) days advance written notice of such change(s) to the Parent Corporation and forty-five (45) days advance written notice to the agent of record, if any. If the Company does not provide such notice within the designated time periods, the Parent Corporation will have the option to extend the Policy Period until notice is given or until the effective date of replacement coverage is obtained by the Named Insured, whichever occurs first. If the Parent Corporation elects not to renew the Policy, any earned premium for the extension period of the terminated policy will be calculated on a pro-rata basis at the lower of the current or prior year's premium. If the Parent Corporation accepts the renewal, the premium increase, if any, and other changes will be effective the day following the expiring policy's expiration or anniversary date.

4. No notice of non-renewal or conditional renewal is required if due to:

   (a) changes in rate or plan filed with and approved by the Rhode Island Commissioner of Insurance and applicable to an entire class of business;

   (b) changes based upon the altered nature or extent of the risk insured; or

(c) changes in the policy forms filed with or approved by the Rhode Island Commissioner of Insurance and applicable to an entire class of business.

5. The Company will provide a copy of any notice of cancellation by the Company to the Parent Corporation's agent of record, if any, at its last address known to the Company. If cancellation of the Policy is effected on behalf of the Parent Corporation by a premium finance company pursuant to the terms of a financing agreement containing a power of attorney, earned premium shall be computed pro-rata and not in accordance with the short-rate table.

6. Proof of the giving, mailing or delivering of notice of cancellation, non-renewal or of premium or coverage changes to the Parent Corporation at the address last known to the Company will be sufficient proof of notice of the foregoing.

7. The Policy will be deemed to have been amended to the extent necessary to effect the purposes of this endorsement.

The regulatory requirements of this Amendatory Endorsement shall supersede and take precedence over any provisions of the Policy or any endorsement to the Policy, whenever added, that are inconsistent with or contrary to the provisions of this Amendatory Endorsement, unless such Policy or endorsement provisions comply with the applicable insurance laws of the state of Rhode Island.

All other terms, conditions and limitations of this policy shall remain unchanged.

Robert Hamburger

Authorized Representative

ENDORSEMENT NO. 2
COMPLIANCE WITH APPLICABLE TRADE SANCTION LAWS

This Endorsement, effective at 12:01 a.m. on September 28, 2005, forms part of

| | |
|---|---|
| Policy No. | 6803-4755 |
| Issued to | Mix it For Me.com |
| Issued by | Executive Risk Indemnity Inc. |

It is agreed that this insurance does not apply to the extent that trade or economic sanctions or other laws or regulations prohibit the coverage provided by this insurance.

All other terms, conditions and limitations of this Policy shall remain unchanged.

Robert Hamburger

Authorized Representative

CHUBB

***Power Source***[sm]

***Directors & Officers Liability Coverage Section***

**In consideration of payment of the premium and subject to the Declarations, General Terms and Conditions, and the limitations, conditions, provisions and other terms of this Coverage Section, the Company and the Insureds agree as follows:**

---

**I. INSURING CLAUSES**

**(A) Individual Non-Indemnified Liability Coverage**

The **Company** shall pay **Loss** on behalf of the **Insured Persons** resulting from any **D&O Claim** first made against such **Insured Persons** during the **Policy Period**, or any applicable Extended Reporting Period, for **Wrongful Acts**, but only to the extent the **Insured Organization** does not indemnify the **Insured Persons** for such **Loss**.

**(B) Individual Indemnified Liability Coverage**

The **Company** shall pay **Loss** on behalf of the **Insured Organization** resulting from any **D&O Claim** first made against **Insured Persons** during the **Policy Period**, or any applicable Extended Reporting Period, for **Wrongful Acts** to the extent the **Insured Organization** indemnifies the **Insured Persons** for such **Loss**.

**(C) Corporate Liability Coverage (Optional)**

If the Corporate Liability Coverage is purchased as set forth in Item 5 of the Declarations, the **Company** shall pay **Loss** on behalf of the **Insured Organization** resulting from any **Insured Organization Claim** first made against such **Insured Organization** during the **Policy Period**, or any applicable Extended Reporting Period, for **Wrongful Acts**.

**(D) Securityholder Derivative Demand Coverage**

The **Company** shall pay **Investigative Costs** on behalf of the **Insured Organization** resulting from any **Securityholder Derivative Demand** first made during the **Policy Period**, or any applicable Extended Reporting Period, for **Wrongful Acts**, in an amount not to exceed $100,000, which amount is part of and not in addition to the applicable Limit of Liability as set forth in Item 4 of the Declarations and no Deductible Amount shall apply to such amount.

---

**II. DEFINITIONS**

For purposes of this Coverage Section:

(A) **Claim** means for purposes of coverage under:

(1) Insuring Clauses (A) and (B): any **D&O Claim**;

(2) Insuring Clause (C): any **Insured Organization Claim**; and

(3) Insuring Clause (D): any **Securityholder Derivative Demand**.

CHUBB

***Power Source***[sm]
***Directors & Officers Liability Coverage Section***

(B) **Debtor in Possession** means a debtor in possession as such term is used in Chapter 11 of the United States of America Bankruptcy Code.

(C) **Defense Costs** means that part of **Loss** consisting of reasonable costs, charges, fees (including but not limited to attorneys' fees and experts' fees) and expenses (other than regular or overtime wages, salaries or fees of the directors, officers or employees of the **Insured Organization**) incurred in defending any **Claim** and the premium for appeal, attachment or similar bonds.

(D) **D&O Claim** means:

(1) any of the following:

(a) a written demand for monetary damages or non-monetary relief;

(b) a civil proceeding commenced by the service of a complaint or similar pleading;

(c) a criminal proceeding commenced by a return of an indictment; or

(d) a formal administrative or regulatory proceeding commenced by the filing of a notice of charges, formal investigative order or similar document;

against an **Insured Person** for a **Wrongful Act**, including any appeal therefrom; or

(2) a formal civil, criminal, administrative or regulatory investigation commenced by the service upon or other receipt by the **Insured Person** of a written notice from the investigating authority specifically identifying the **Insured Person** as a target individual against whom formal charges may be commenced; or

(3) a written request received by an **Insured** to toll or waive a statute of limitations, relating to a potential **D&O Claim** as described in paragraphs (1) and (2) above.

(E) **Employee** means any natural person whose labor or service is engaged by and directed by the **Insured Organization**, including part-time, seasonal, leased and temporary employees as well as volunteers. **Employee** shall not include any independent contractor.

(F) **Executive** means any natural person specified below:

(1) duly elected or appointed directors, officers, members of the Board of Managers or management committee members of any **Insured Organization** incorporated in the United States of America;

(2) in-house general counsel of any **Insured Organization** incorporated in the United States of America; or

(3) equivalent positions of (1) or (2) above in any **Insured Organization** chartered in any other jurisdiction anywhere in the world.

(G) **Financial Impairment** means the status of an **Insured Organization** resulting from:

CHUBB

***Power Source***[sm]
***Directors & Officers Liability Coverage Section***

(1) the appointment by any state or federal official, agency or court of any receiver, conservator, liquidator, trustee, rehabilitator or similar official to take control of, supervise, manage or liquidate such **Insured Organization**; or

(2) such **Insured Organization** becoming a **Debtor in Possession**.

(H) **Insured** means the **Insured Organization** and any **Insured Person**.

(I) **Insured Organization Claim** means:

(1) any of the following:

(a) a written demand for monetary damages or non-monetary relief;

(b) a civil proceeding commenced by the service of a complaint or a similar pleading; or

(c) a criminal proceeding commenced by a return of an indictment;

against an **Insured Organization** for a **Wrongful Act**, including any appeal therefrom; or

(2) a written request received by an **Insured Organization** to toll or waive a statute of limitations, relating to a potential **Insured Organization Claim** as described in paragraph (1) above.

(J) **Insured Person** means any past, present or future **Executive** or **Employee** of the **Insured Organization**.

(K) **Investigative Costs** means reasonable costs, charges, fees (including but not limited to attorneys' fees and experts' fees) and expenses (other than regular or overtime wages, salaries or fees of the **Executives** or **Employees**) incurred by the **Insured Organization**, including its board of directors, Board of Managers, or any committee thereof, in connection with the **Insured Organization's** investigation or evaluation of any **Securityholder Derivative Demand**.

(L) **Loss** means the total amount which any **Insured** becomes legally obligated to pay as a result of any **Claim** made against any **Insured** for **Wrongful Acts**, including, but not limited to, damages (including punitive or exemplary damages, to the extent such damages are insurable under the law of any jurisdiction which has a substantial relationship to the **Insureds**, the **Company**, this Policy or the **Claim** and which is most favorable to the insurability of such damages), judgments, settlements, pre-judgment and post-judgment interest and **Defense Costs**. **Loss** does not include:

(1) any amount for which an **Insured Organization** or an **Insured Person** is absolved from payment by reason of any covenant, agreement (other than indemnification of an **Insured Person** by the **Insured Organization**) or court order;

(2) matters uninsurable under the law pursuant to which this Policy is construed;

(3) taxes, fines or penalties imposed by law, or the multiple portion of any multiplied damage award;

CHUBB

***Power Source[sm]***
***Directors & Officers Liability Coverage Section***

(4) any amount incurred by the **Insured Organization** (including its board of directors, Board of Managers, or any committee thereof) in connection with the investigation or evaluation of any **Claim** or potential **Claim** by or on behalf of the **Insured Organization**, except, solely with respect to the Securityholder Derivative Demand Coverage, **Investigative Costs**; or

(5) any amount allocated to uncovered loss pursuant to Section X Allocation of the General Terms and Conditions.

(M) **Outside Capacity** means service by an **Insured Person** as a director, officer, trustee, regent, governor or any equivalent executive position in an **Outside Entity**, but solely during the time that such service is with the knowledge and consent or at the request of the **Insured Organization**.

(N) **Outside Capacity Wrongful Act** means any error, misstatement, misleading statement, act, omission, neglect, or breach of duty committed, attempted, or allegedly committed or attempted by an **Insured Person** in his or her **Outside Capacity**.

(O) **Outside Entity** means:

(1) any non-profit corporation, community chest, fund or foundation that is not included in the definition of **Insured Organization** and that is exempt from federal income tax as an organization described in Section 501(C)(3) of the Internal Revenue Code of 1986, as amended;

(2) any other entity organized for a religious or charitable purpose under any non-profit organization act or statute; and

(3) any other non-profit or any for-profit entity if such entity is specifically added as an **Outside Entity** by written endorsement attached to this Policy.

(P) **Pollutants** means any substance located anywhere in the world exhibiting any hazardous characteristics as defined by, or identified on a list of hazardous substances issued by, the United States Environmental Protection Agency or any state, county, municipality or locality counterpart thereof. Such substances shall include, without limitation, solids, liquids, gaseous or thermal irritants, contaminants or smoke, vapor, soot, fumes, acids, alkalis, chemicals or waste materials. **Pollutants** shall also mean any other air emission, odor, waste water, oil or oil products, infectious or medical waste, asbestos or asbestos products and any noise.

(Q) **Pollution** means the actual, alleged or threatened discharge, release, escape or disposal of **Pollutants** into or on real or personal property, water or the atmosphere or any direction or request that the **Insured** test for, monitor, clean up, remove, contain, treat, detoxify or neutralize **Pollutants**, or any voluntary decision to do so.

(R) **Securities Laws** means the Securities Act of 1933, Securities Exchange Act of 1934, Investment Act of 1940, any state "blue sky" securities law, or any other federal, state or local securities law or any amendments thereto or any rules or regulations promulgated thereunder or any other provision of statutory or common law used to impose liability in connection with the offer to sell or purchase, or the sale or purchase of securities.

(S) **Securityholder Derivative Action** means any **Claim** brought on behalf of, or in the name or the right of, the **Insured Organization** by one or more securityholders of the **Insured Organization**

in their capacity as such if such **Claim** is brought and maintained without the assistance, participation or solicitation of any **Executive.**

(T) **Securityholder Derivative Demand** means any written demand, by one or more securityholders of an **Insured Organization** without the assistance, participation or solicitation of any **Executive**, upon the board of directors or Board of Managers of such **Insured Organization**, to bring a civil proceeding in a court of law against any **Executive** for a **Wrongful Act** by an **Executive**.

(U) **Wrongful Act** means:

(1) any error, misstatement, misleading statement, act, omission, neglect, or breach of duty committed, attempted, or allegedly committed or attempted by:

(a) For purposes of coverage under Insuring Clauses (A) and (B): any **Insured Person** in his or her capacity as such, or any matter claimed against any **Insured Person** solely by reason of his or her status as such;

(b) For purposes of coverage under Insuring Clause (C): any **Insured Organization**; or

(c) For purposes of coverage under Insuring Clause (D): any **Executive**; or

(2) any **Outside Capacity Wrongful Act**.

---

## III. EXCLUSIONS

(A) No coverage will be available under this Coverage Section for any **Claim** against an **Insured**:

(1) based upon, arising from, or in consequence of any circumstance, if written notice of such circumstance has been given under any policy of which this Coverage Section is a direct or indirect renewal or replacement and if such prior policy affords coverage (or would afford such coverage except for the exhaustion of its limits of liability) for such **Claim**, in whole or in part, as a result of such notice;

(2) based upon, arising from, or in consequence of a written demand, suit, or other proceeding pending, or order, decree or judgment entered for or against any **Insured** on or prior to the applicable Pending or Prior Litigation Date as set forth in Item 10 of the Declarations, or the same or any substantially similar fact, circumstance or situation underlying or alleged therein;

(3) based upon, arising from, or in consequence of **Pollution**, including but not limited to any securities **Claim**, **Securityholder Derivative Demand** or **Securityholder Derivative Action** for financial loss to any **Insured Organization**, its securityholders or its creditors in connection with **Pollution**; provided that this Exclusion (A)(3) shall not apply to any **Securityholder Derivative Demand** or **Securityholder Derivative Action** under Insuring Clause (A) for which the **Insured Organization** does not indemnify the **Insured Person** either because the **Insured Organization** is not permitted by common or statutory law to grant such indemnification or because of the **Financial Impairment** of the **Insured Organization**;

CHUBB

***Power Source**[sm]*

***Directors & Officers Liability Coverage Section***

(4) for bodily injury, mental anguish, emotional distress, sickness, disease or death of any person or damage to or destruction of any tangible property including loss of use thereof whether or not it is damaged or destroyed; provided that this Exclusion (A)(4) shall not apply to mental anguish, humiliation or emotional distress asserted in an employment-related **D&O Claim**;

(5) brought or maintained by or on behalf of any **Insured** in any capacity; provided that this Exclusion (A)(5) shall not apply to:

(a) a **Securityholder Derivative Demand** or **Securityholder Derivative Action**;

(b) a **Claim** brought or maintained by an **Insured Person** for contribution or indemnification, if such **Claim** directly results from another **Claim** covered under this Coverage Section;

(c) a **D&O Claim** brought or maintained by **Employees** who are not past or present **Executives** of an **Insured Organization** if such **D&O Claim** is brought and maintained without the assistance, participation or solicitation of any such **Executives**;

(d) a **D&O Claim** brought or maintained by an **Executive** for the actual or alleged wrongful termination of such **Executive**;

(e) a **Claim** brought or maintained by an **Executive** who has not served as an **Executive** of the **Insured Organization** for at least four (4) years prior to the date such **Claim** is first made and who brings and maintains such **Claim** without the assistance, participation or solicitation of the **Insured Organization** or any **Insured Person** who: (i) is serving as an **Executive** of the **Insured Organization**; or (ii) has served as an **Executive** of the **Insured Organization** within such four (4) year period; or

(f) a **Claim** brought and maintained in a jurisdiction outside the United States of America, Canada or Australia by an **Insured Person** of an **Insured Organization** chartered in such foreign jurisdiction;

(6) brought or maintained by or on behalf of any **Outside Entity**, or one or more directors or officers of any **Outside Entity**; provided that this Exclusion (A)(6) shall not apply to:

(a) a **Claim** that is a derivative action brought or maintained on behalf of an **Outside Entity** by one or more persons who are not: **Insured Persons**; or directors, officers, trustees, regents, governors or any equivalent executive position of the **Outside Entity**; and who bring and maintain such **Claim** without the solicitation, assistance or participation of any such person; or

(b) a **Claim** brought or maintained by: an **Insured Person**; or directors, officers, trustees, regents, governors or any equivalent executive position of an **Outside Entity**; for contribution or indemnification, if such **Claim** directly results from another **Claim** covered under this Coverage Section;

(7) for **Wrongful Acts** of an **Insured Person** in his or her capacity as a director, officer, trustee, regent, governor or employee of an entity other than an **Insured Organization**,

CHUBB



even if such service is with the knowledge or consent or at the request of the **Insured Organization**, provided this exclusion shall not apply to service in an **Outside Capacity**;

(8) for an actual or alleged violation of the responsibilities, obligations or duties imposed by the Employee Retirement Income Security Act of 1974, or any amendments thereto or any rules or regulations promulgated thereunder, or any similar provisions of any federal, state, or local statutory law or common law anywhere in the world;

(9) based upon, arising from, or in consequence of the actual or alleged violation of any **Securities Laws**; provided that this Exclusion (A)(9) shall not apply to any **Claim**:

(a) based upon or arising out of the offering, sale or purchase of securities, whether debt or equity, in a transaction or a series of transactions that are in fact in law exempt from registration under the Securities Act of 1933 and any amendments thereto or any rules or regulations promulgated thereunder; or

(b) made by any securityholder of the **Insured Organization** for the failure of the **Insured Organization** to undertake or complete the initial public offering or sale of securities of the **Insured Organization**;

(10) based upon, arising from, or in consequence of any deliberately fraudulent act or omission or any willful violation of any statute or regulation by such **Insured**, if a final and non-appealable judgment or adjudication adverse to such **Insured** establishes such a deliberately fraudulent act or omission or willful violation; or

(11) based upon, arising from, or in consequence of such **Insured** having gained in fact any profit, remuneration or financial advantage to which such **Insured** was not legally entitled.

(B) No coverage will be available under this Coverage Section for **Loss**, other than **Defense Costs**, which constitutes costs of compliance with any order for, grant of or agreement to provide non-monetary relief.

(C) No coverage will be available under Insuring Clause (C) for any **Insured Organization Claim**:

(1) based upon, arising from, or in consequence of the actual or proposed payment by the **Insured Organization** of allegedly inadequate consideration in connection with an **Insured Organization's** purchase of securities issued by any **Insured Organization**; provided that this Exclusion (C)(1) shall not apply to **Defense Costs**;

(2) based upon, arising from, or in consequence of any actual or alleged liability of an **Insured Organization** under any written or oral contract or agreement, provided that this Exclusion (C)(2) shall not apply to the extent that an **Insured Organization** would have been liable in the absence of the contract or agreement;

(3) based upon, arising from, or in consequence of any employment-related **Wrongful Act**;

(4) based upon, arising from, or in consequence of any actual or alleged discrimination or sexual harassment of any third party;

(5) based upon, arising from, or in consequence of libel, slander, oral or written publication of defamatory or disparaging material, invasion of privacy, wrongful entry, eviction, false

arrest, false imprisonment, malicious prosecution, malicious use or abuse of process, assault, battery or loss of consortium;

(6) based upon, arising from, or in consequence of any actual or alleged error, misstatement, misleading statement, act, omission, neglect, or breach of duty committed, attempted or allegedly committed or attempted in connection with the rendering of, or actual or alleged failure to render, any professional services for others by any person or entity otherwise entitled to coverage under this Coverage Section; provided that this Exclusion (C)(6) shall not apply to any securities **Claim**, **Securityholder Derivative Demand** or **Securityholder Derivative Action**;

(7) based upon, arising from, or in consequence of any actual or alleged infringement of copyright, patent, trademark, trade name, trade dress, service mark or misappropriation of ideas or trade secrets; or

(8) based upon, arising from, or in consequence of allegations of price fixing, restraint of trade, monopolization, unfair trade practices or any actual or alleged violation of the Federal Trade Commission Act, the Sherman Anti-Trust Act, the Clayton Act, or any other federal statutory provision involving anti-trust, monopoly, price fixing, price discrimination, predatory pricing or restraint of trade activities, and any amendments thereto or any rules or regulations promulgated thereunder or in connection with such statutes; or any similar provision of any federal, state, or local statutory law or common law anywhere in the world.

(D) **Severability of Exclusions**

With respect to the Exclusions (A)(10) and (A)(11) in this Coverage Section:

(1) no fact pertaining to or knowledge possessed by any **Insured Person** shall be imputed to any other **Insured Person** to determine if coverage is available; and

(2) only facts pertaining to and knowledge possessed by any past, present or future Chief Financial Officer, President, Chief Executive Officer or Chairperson of any **Insured Organization** shall be imputed to any **Insured Organization** to determine if coverage is available.

---

**IV. ADDITIONAL LIMIT OF LIABILITY DEDICATED FOR EXECUTIVES (Optional)**

(A) Notwithstanding anything in this Policy to the contrary, the Additional Limit of Liability Dedicated For Executives, if purchased as set forth in Item 5 of the Declarations, will be an additional Limit of Liability in an amount not to exceed $500,000, which amount is in addition to and not part of the Limit of Liability as set forth in Item 4 of the Declarations.

(B) This Additional Limit of Liability Dedicated For Executives is available solely for **Loss** resulting from any **D&O Claim** against any **Executive** covered under Insuring Clause (A) of this Coverage Section.

(C) The Additional Limit of Liability Dedicated For Executives shall be excess of any insurance available that is specifically excess to this Policy and such excess insurance must be completely

CHUBB



exhausted by payment of loss, damages or defense costs thereunder before the **Company** shall have any obligation to make any payment on account of the Additional Limit of Liability Dedicated For Executives.

---

## V. PAYMENT OF LOSS

(A) In the event of **Loss** arising from one or more **Claims** for which payment is otherwise due under this Coverage Section but which **Loss** in the aggregate exceeds the remaining available Limit of Liability for this Coverage Section, the **Company** shall:

(1) first pay such **Loss** for which coverage is provided under Insuring Clause (A) of this Coverage Section; then

(2) with respect to whatever remaining amount of the Limit of Liability is available after payment of (1) above, pay such **Loss** for which coverage is provided under any other Insuring Clause of this Coverage Section.

(B) Subject to the provisions of paragraph (A)(2) above, the **Company** shall, at the written request of the **Parent Corporation**, delay payment of **Loss** for which coverage is provided under any Insuring Clause other than Insuring Clause (A) until such time as the **Parent Corporation** designates; provided that the **Company's** liability with respect to such delayed payment shall not be increased, and shall not include any interest as a result of such delay. The **Parent Corporation** shall provide written notice to the **Company** when such delayed payment shall be made. Such written notice shall be deemed consent from all **Insureds**, including all **Insured Persons**, to release such payment and the **Company** shall have no further obligation under this Policy with respect to such funds.

---

## VI. SECURITIES TRANSACTIONS

If, during the **Policy Period**, the **Insured Organization** intends to sell or offer to sell securities of any kind or nature whatsoever, issued at any time by the **Insured Organization** in a transaction that is not exempt from registration under the Securities Act of 1933, as amended (a "Transaction"), the **Insured Organization** will, no later than thirty (30) days prior to the effective date of the registration statement for such sale or offering, give the **Company** written notice of the proposed sale or offering and all information requested by the **Company** relating thereto. The **Company** shall provide to the **Insured Organization** a quotation for coverage with respect to such sale or offering; provided any such coverage shall be subject to such terms, conditions, limitations of coverage and such additional premium as the **Company**, in its sole discretion, may require. Unless and until the **Company** determines to issue coverage there shall in fact be no coverage for such Transaction.

---

## VII. OTHER INSURANCE

(A) If any **Loss** under this Coverage Section is insured under any other valid and collectible insurance policy(ies), prior or current, then this Coverage Section shall cover such **Loss**, subject to its limitations, conditions, provisions and other terms, only to the extent that the amount of such

CHUBB

*Power Source*sm
***Directors & Officers Liability Coverage Section***

**Loss** is in excess of the amount of such other insurance whether such other insurance is stated to be primary, contributory, excess, contingent or otherwise, unless such other insurance is written only as specific excess insurance over the Limit of Liability provided in this Coverage Section.

(B) Any coverage for **Claims** for **Outside Capacity Wrongful Acts** will be specifically excess of any insurance provided by or indemnification available from the **Outside Entity** or any other source, other than the **Insured Organization**, for the benefit of the **Insured Person** serving in such **Outside Capacity**. Payment by the **Company** or any affiliate of the **Company** under another policy as a result of a **Claim** against an **Insured Person** in an **Outside Capacity** shall reduce, by the amount of such payment, the **Company's** Limit of Liability under this Coverage Section with respect to such **Claim**.

---

## VIII. COORDINATION OF COVERAGE

Any **Loss** covered under both this Coverage Section and the Employment Practices Liability Coverage Section, if purchased, shall be first covered under the Employment Practices Liability Coverage Section, subject to the terms, conditions and limitations therein. Any remaining portion of such **Loss** otherwise covered under this Coverage Section which is not paid under the Employment Practices Liability Coverage Section shall be covered under this Coverage Section, subject to its terms, conditions and limitations.

**ENDORSEMENT**

Coverage Section: Power Source D&O Liability Coverage Section

Effective date of
this endorsement: September 28, 2005

Company: Executive Risk Indemnity Inc.

Endorsement No. 1

To be attached to and
form a part of Policy No. 6803-4755

Issued to: Mix it For Me.com

---

PRODUCT EXCLUSION

In consideration of the premium charged, it is agreed that no coverage will be available under Insuring Clause (C) of the Coverage Section identified above for any **Insured Organization Claim** based upon, arising from, or in consequence of any actual or alleged malfunction of any product or failure of any product to perform in any manner as a result of any defect, deficiency or inadequacy in the design or manufacture of such product.

The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this policy shall remain unchanged.

Robert Hamburger

Authorized Representative

CHUBB

**Power Source**$^{sm}$
**Employment Practices Liability Coverage**

**Section**

sexual orientation or preference, Vietnam Era Veteran status or other protected military status or other status that is protected pursuant to any federal, state, or local statutory law or common law anywhere in the world.

(F) **Employee** means any natural person whose labor or service is engaged by and directed by the **Insured Organization**, including part-time, seasonal, leased and temporary employees as well as volunteers, but only while that natural person is acting in his or her capacity as such. **Employee** shall not include any **Independent Contractor**.

(G) **Employment Claim** means:

(1) any of the following:

(a) a written demand for monetary damages or non-monetary relief, including but not limited to a written demand for reinstatement, reemployment or re-engagement;

(b) a civil proceeding commenced by the service of a complaint or similar pleading;

(c) an arbitration proceeding; or

(d) a formal administrative or regulatory proceeding or tribunal proceeding, commenced by the filing of a notice of charges, formal investigative order or similar document, including, but not limited to, any Equal Employment Opportunity Commission proceeding or any other similar governmental agency located anywhere in the world; provided however that in the context of an audit conducted by the Office of Federal Contract Compliance Programs ("OFCCP"), **Employment Claim** shall be limited to a Notice of Violation or Order to Show Cause or written demand for monetary damages or injunctive relief;

which is brought and maintained by or on behalf of any past, present or prospective **Employee**, **Executive** or **Independent Contractor** or by the OFCCP, with respect to paragraph (d) above, against any **Insured** for a **Wrongful Act** in connection with any actual or alleged **Breach of Employment Contract**, **Discrimination**, **Harassment**, **Retaliation**, **Workplace Tort** or **Wrongful Employment Decision** (even if such **Wrongful Act** is related to allegations in a criminal proceeding), including any appeal therefrom; or

(2) a written request received by an **Insured** to toll or waive a statute of limitations, relating to a potential **Employment Claim** as described in paragraph (1) above.

**Employment Claim** shall not include any labor or grievance arbitration or other proceeding pursuant to a collective bargaining agreement.

(H) **Executive** means any natural person specified below:

(1) duly elected or appointed as a directors, officers, members of the Board of Managers or management committee members of any **Insured Organization** incorporated in the United States of America;

(2) in-house general counsel of any **Insured Organization** incorporated in the United States of America; or

CHUBB

**Power Source**sm
**Employment Practices Liability Coverage**

**Section**

(3) equivalent positions of (1) or (2) above in any **Insured Organization** chartered in any other jurisdiction anywhere in the world.

(I) **Harassment** means:

(1) sexual harassment, including unwelcome sexual advances, requests for sexual favors, or other conduct of a sexual nature that is made a condition of employment with, used as a basis for employment decisions by, interferes with performance or creates an intimidating, hostile or offensive working environment within, the **Insured Organization**; or

(2) workplace harassment, including work related harassment of a non-sexual nature that interferes with performance or creates an intimidating, hostile or offensive working environment within the **Insured Organization**.

(J) **Independent Contractor** means any natural person working for the **Insured Organization** in the capacity of an independent contractor and pursuant to an **Independent Contractor Services Agreement**.

(K) **Independent Contractor Services Agreement** means any express contract or agreement between an **Independent Contractor** and the **Insured Organization** governing the nature of the **Insureds'** engagement of such **Independent Contractor**.

(L) **Insured** means the **Insured Organization** and any **Insured Person**.

(M) **Insured Person** means:

(1) any past, present or future **Executive** or **Employee** of the **Insured Organization**; and

(2) with respect to Insuring Clause (A), any **Independent Contractor**, but only if the **Insured Organization** agrees in writing, prior to or no later than thirty (30) days after the **Employment Claim** or **Third Party Liability Claim** is made, to indemnify the **Independent Contractor** for liability arising out of any **Employment Claim** or **Third Party Liability Claim**.

(N) **Loss** means the total amount which any **Insured** becomes legally obligated to pay as a result of any **Claim** made against any **Insured** for **Wrongful Acts**, including, but not limited to, damages (including punitive or exemplary damages, liquidated damages awarded pursuant to the Age Discrimination in Employment Act or the Equal Pay Act, or the multiple portion of any multiplied damage award, to the extent such damages are insurable under the law of any jurisdiction which has a substantial relationship to the **Insureds**, the **Company**, this Policy or the **Claim** and which is most favorable to the insurability of such damages), judgments, settlements, pre-judgment and post-judgment interest and **Defense Costs**. **Loss** does not include:

(1) any amount for which an **Insured Organization** or an **Insured Person** is absolved from payment by reason of any covenant, agreement (other than indemnification of an **Insured Person** by the **Insured Organization**) or court order;

(2) matters uninsurable under the law pursuant to which this Policy is construed;

(3) taxes, fines or penalties imposed by law;

(4) **Stock Benefits**;

(5) any amount allocated to uncovered loss pursuant to Section X Allocation of the General Terms and Conditions Section;

(6) the future compensation or **Benefits** of a claimant who has been or shall be hired, promoted or reinstated to employment pursuant to a settlement, order or other resolution of such **Claim**; or

(7) any monetary payment for violation of any notice requirement pursuant to or for a notice period under any applicable law, including the Worker Adjustment and Retraining Notification Act or any amendments thereto or any rules or regulations promulgated thereunder, or any similar provisions of any federal, state, or local statutory law or common law anywhere in the world.

(O) **Pollutants** means any substance located anywhere in the world exhibiting any hazardous characteristics as defined by, or identified on a list of hazardous substances issued by, the United States Environmental Protection Agency or any state, county, municipality or locality counterpart thereof. Such substances shall include, without limitation, solids, liquids, gaseous or thermal irritants, contaminants or smoke, vapor, soot, fumes, acids, alkalis, chemicals or waste materials. **Pollutants** shall also mean any other air emission, odor, waste water, oil or oil products, infectious or medical waste, asbestos or asbestos products and any noise.

(P) **Pollution** means the actual, alleged or threatened discharge, release, escape or disposal of **Pollutants** into or on real or personal property, water or the atmosphere or any direction or request that the **Insured** test for, monitor, clean up, remove, contain, treat, detoxify or neutralize **Pollutants**, or any voluntary decision to do so.

(Q) **Retaliation** means retaliatory treatment against an **Employee, Executive** or **Independent Contractor** on account of such individual:

(1) exercising his or her rights under law, including but not limited to rights under any workers compensation laws, the Family and Medical Leave Act, or the Americans with Disabilities Act;

(2) refusing to violate any law;

(3) having assisted or testified in or cooperated with a proceeding or investigation regarding alleged violations of law by the **Insured Organization**;

(4) disclosing or threatening to disclose to a superior or to any governmental agency any alleged violations of law; or

(5) filing any claim against the **Insured Organization** under the Federal False Claims Act or any other similar "whistle blower" federal, state, or local statutory law or common law anywhere in the world.

(R) **Stock Benefits** means any offering, plan or agreement between the **Insured Organization** and any **Executive** or **Employee** which grants stock or stock options or stock appreciation rights as to the **Insured Organization** to such individual, including but not limited to stock options, restricted

stock or any other stock grant, but not including employee stock ownership plans or employee stock purchase plans.

(S) **Third Party** means any natural person who is a customer, vendor, service provider or other business invitee of the **Insured Organization**. **Third Party** shall not include **Employees**.

(T) **Third Party Claim** means:

(1) any of the following:

(a) a written demand for monetary damages or non-monetary relief;

(b) a civil proceeding commenced by the service of a complaint or similar pleading;

(c) an arbitration proceeding; or

(d) a formal administrative regulatory or tribunal proceeding commenced by the filing of a notice of charges, formal investigative order or similar document;

which is brought and maintained by or on behalf of a **Third Party** against an **Insured** for a **Wrongful Act** in connection with any actual or alleged **Third Party Discrimination or Sexual Harassment**, including any appeal therefrom; or

(2) a written request received by an **Insured** to toll or waive a statute of limitations, relating to a potential **Third Party Claim** as described in paragraph (1) above.

(U) **Third Party Discrimination or Sexual Harassment** means:

(1) discrimination against a **Third Party** based upon such **Third Party's** race, color, religion, creed, age, sex, disability, marital status, national origin, pregnancy, HIV status, sexual orientation or preference, Vietnam Era Veteran status or other protected military status or other status that is protected pursuant to any federal, state, or local statutory law or common law anywhere in the world; or

(2) sexual harassment, including unwelcome sexual advances, requests for sexual favors or other conduct of a sexual nature against a **Third Party**.

(V) **Workplace Tort** means actual or alleged:

(1) employment-related misrepresentation, defamation (including libel and slander), invasion of privacy, negligent evaluation, wrongful discipline or wrongful deprivation of career opportunity; or

(2) employment-related negligent retention, supervision, hiring or training, employment-related wrongful infliction of emotional distress, mental anguish or humiliation or failure to provide or enforce consistent employment-related corporate policies and procedures; when alleged as part of an **Employment Claim** for actual or alleged **Wrongful Employment Decision**, **Breach of Employment Contract**, **Discrimination**, **Harassment**, or **Retaliation**.

CHUBB

**Power Source**sm
**Employment Practices Liability Coverage**
**Section**

(W) **Wrongful Act** means any error, misstatement, misleading statement, act, omission, neglect, or breach of duty committed, attempted, or allegedly committed or attempted by any **Insured Organization** or by any **Insured Person** in his or her capacity as such, or any matter claimed against any **Insured Person** solely by reason of his or her status as such.

(X) **Wrongful Employment Decision** means the actual, alleged or constructive termination, dismissal, or discharge of employment, demotion, denial of tenure, or failure or refusal to hire or promote. **Wrongful Employment Decision** shall not include **Breach of Employment Contract**.

III. EXCLUSIONS

(A) No coverage will be available under this Coverage Section for any **Claim**:

(1) based upon, arising from, or in consequence of any circumstance, if written notice of such circumstance has been given under any policy of which this Coverage Section is a direct or indirect renewal or replacement and if such prior policy affords coverage (or would afford such coverage except for the exhaustion of its limits of liability) for such **Claim**, in whole or in part, as a result of such notice;

(2) based upon, arising from, or in consequence of a written demand, suit, formal administrative or regulatory proceeding commenced by the filing of a notice of charges, formal investigative order or similar document, an audit conducted by the Office of Federal Contract Compliance Programs or arbitration proceeding pending or order, decree or judgment entered for or against any **Insured** on or prior to the applicable Pending or Prior Litigation Date as set forth in Item 10 of the Declarations or the same or any substantially similar fact, circumstance or situation underlying or alleged therein;

(3) based upon, arising from, or in consequence of **Pollution**; provided that this Exclusion (A)(3) shall not apply to any **Employment Claim** for **Retaliation**;

(4) for bodily injury, mental anguish, emotional distress, sickness, disease or death of any person or damage to or destruction of any tangible property including loss of use thereof whether or not it is damaged or destroyed; provided that this Exclusion (A)(4) shall not apply to any emotional distress, mental anguish or humiliation;

(5) based upon, arising from, or in consequence of any actual or alleged obligation of any **Insured** pursuant to any workers compensation, unemployment insurance, social security, disability benefits or any similar federal, state, or local statutory law or common law anywhere in the world; provided that this Exclusion (A)(5) shall not apply to any **Employment Claim** for **Retaliation**;

(6) based upon, arising from, or in consequence of the liability of others assumed by any **Insured** under any contract or agreement, either oral or written, except to the extent that an **Insured** would have been liable in the absence of the contract or agreement;

(7) for any actual or alleged breach of any **Independent Contractor Services Agreement**;

(8) for any actual or alleged violation of the responsibilities, obligations or duties imposed by the Employee Retirement Income Securities Act of 1974 (except Section 510 thereof), the Fair Labor Standards Act (except the Equal Pay Act), the Worker Adjustment and Retraining Notification Act, the Consolidated Omnibus Budget Reconciliation Act of 1985,

CHUBB

# *Power Source[sm]*
## *Employment Practices Liability Coverage*

*Section*

**In consideration of payment of the premium and subject to the Declarations, General Terms and Conditions, and the limitations, conditions, provisions and other terms of this Coverage Section, the Company and the Insureds agree as follows:**

---

**I. INSURING CLAUSES**

(A) **Employment Practices Liability Coverage**

The **Company** shall pay **Loss** on behalf of the **Insureds** resulting from any **Employment Claim** first made against such **Insureds** during the **Policy Period**, or any applicable the Extended Reporting Period, for **Wrongful Acts**.

(B) **Third Party Liability Coverage (Optional)**

If Third Party Liability Coverage is purchased as set forth in Item 5 of the Declarations, the **Company** shall pay **Loss** on behalf of the **Insureds** resulting from any **Third Party Claim** first made against such **Insureds** during the **Policy Period**, or any applicable Extended Reporting Period, for **Wrongful Acts** in the amount set forth in Item 5 of the Declarations. Such amount shall be part of and not in addition to the Limit of Liability as set forth in Item 4 of the Declarations.

---

**II. DEFINITIONS**

For purposes of this Coverage Section:

(A) **Benefits** means perquisites, fringe benefits, deferred compensation or payments (including insurance premiums) in connection with an employee benefit plan and any other payment. **Benefits** shall not include salary or wages, **Stock Benefits** or non-deferred cash incentive compensation.

(B) **Breach of Employment Contract** means any breach of any oral, written or implied contract or contractual obligation including but not limited to any such obligation arising out of any personnel manual, employee handbook, policy statement or other representation.

(C) **Claim** means any **Employment Claim** and any **Third Party Claim**.

(D) **Defense Costs** means that part of **Loss** consisting of reasonable costs, charges, fees (including but not limited to attorneys' fees and experts' fees) and expenses (other than regular or overtime wages, salaries or fees of the directors, officers or employees of the **Insured Organization**) incurred in defending any **Claim** and the premium for appeal, attachment or similar bonds.

(E) **Discrimination** means any violation of employment discrimination laws including any actual, alleged or constructive employment termination, dismissal, or discharge, employment demotion, denial of tenure, modification of any term or condition of employment, any failure or refusal to hire or promote, or any limitation, segregation or classification of any **Employee** or applicant for employment in any way that would deprive or tend to deprive any person of employment opportunities or otherwise affect his or her status as an **Employee** based on such person's race, color, religion, creed, age, sex, disability, marital status, national origin, pregnancy, HIV status,

the Occupational Safety and Health Act, or any amendments thereto or any rules or regulations promulgated thereunder, or any similar provisions of any federal, state, or local statutory law or common law anywhere in the world; provided that this Exclusion (A)(8) shall not apply to any **Employment Claim** for **Retaliation**; or

(9) for any actual or alleged violation of the responsibilities, obligations or duties imposed by the National Labor Relations Act or any amendments thereto or any rules or regulations promulgated thereunder, or any similar provisions of any federal, state, or local statutory law or common law anywhere in the world.

(B) No coverage will be available under this Coverage Section for **Loss**, other than **Defense Costs**:

(1) which constitutes **Benefits** due or to become due or the equivalent value of such **Benefits**; provided that this Exclusion (B)(1) shall not apply to any **Employment Claim** for actual or alleged wrongful termination, dismissal or discharge of employment;

(2) which constitutes costs associated with any accommodation pursuant to the Americans with Disabilities Act or the Civil Rights Act of 1964 or any amendments thereto or any rules or regulations promulgated thereunder, or any similar provisions of any federal, state, or local statutory law or common law anywhere in the world;

(3) which constitutes costs of compliance with any order for, grant of or agreement to provide non-monetary relief; or

(4) which constitutes severance payments pursuant to an express written obligation in the event of a termination of employment; provided that this Exclusion (B)(4) shall not apply to the extent such payments are negotiated with and consented to by the **Company** as part of a settlement.

(C) No coverage will be available under this Coverage Section for **Loss**, other than **Defense Costs**, resulting from any **Claim** based upon, arising from, or in consequence of any actual or alleged breach of any written employment contract; provided that this Exclusion (C) shall not apply to the extent an **Insured** would have been liable for such **Loss** in the absence of such written employment contract.

(D) No coverage will be available under this Coverage Section for any **Third Party Claim** in connection with any actual or alleged price discrimination or violation of any anti-trust statute or other law designed to protect competition or prevent unfair trade practices.

---

## IV. EMPLOYMENT CLAIM ARBITRATION

(A) Any dispute between any **Insured** and the **Company** based upon, arising from or in connection with any actual or alleged coverage under this Coverage Section, including but not limited to any dispute sounding in contract or tort, shall be submitted to binding arbitration.

(B) The **Insured Organization**, however, shall first have the option to resolve the dispute by non-binding mediation pursuant to such rules and procedures, and using such mediator, as the parties may agree. If the parties cannot so agree, the mediation shall be administered by the American Arbitration Association pursuant to its then prevailing commercial mediation rules.

(C) If the parties cannot resolve the dispute by non-binding mediation, the parties shall submit the dispute to binding arbitration pursuant to the rules of the American Arbitration Association, except that the arbitration panel shall consist of one arbitrator selected by the **Insureds**, one arbitrator selected by the **Company**, and a third arbitrator selected by the first two arbitrators.

---

## V. OTHER INSURANCE

Unless specifically stated otherwise, the coverage afforded under this Coverage Section:

(A) for **Employment Claims**, shall be primary; provided that with respect to that portion of an **Employment Claim** made against any leased or temporary **Employee** or **Independent Contractor**, **Loss**, including **Defense Costs**, payable on behalf of such leased or temporary **Employee** or **Independent Contractor** under this Coverage Section will be specifically excess of and will not contribute with other valid insurance, including but not limited to any other insurance under which there is a duty to defend, unless such other insurance is specifically stated to be in excess over the Limit of Liability of this Coverage Section.

(B) for **Third Party Claims**, shall be specifically excess of and will not contribute with other valid insurance, including but not limited to any other insurance under which there is a duty to defend, unless such other insurance is specifically stated to be in excess over the Limit of Liability of this Coverage Section.

---

## VI. COORDINATION OF COVERAGE

Any **Loss** covered under this Coverage Section and either the Directors and Officers Liability Coverage Section or the Fiduciary Liability Coverage Section, if purchased, shall be first covered under this Coverage Section, subject to its terms, conditions and limitations.

**ENDORSEMENT**

Coverage Section: Power Source EPL Coverage Section

Effective date of
this endorsement: September 28, 2005

Company: Executive Risk Indemnity Inc.

Endorsement No. 1

To be attached to and
form a part of Policy No. 6803-4755

Issued to: Mix it For Me.com

---

EMPLOYMENT PRACTICES LIABILITY COVERAGE SECTION ENDORSEMENT

In consideration of the premium charged, it is agreed that:

(1) Subparagraph (2) of Section II Definitions (M) of the Coverage Section identified above is amended to read in its entirety as follows:

(2) with respect to Insuring Clause (A), and Insuring Clause (B) if applicable, any **Independent Contractor**, but only if the **Insured Organization** agrees in writing, prior to or no later than thirty (30) days after the **Employment Claim** or **Third Party Claim** is made, to indemnify the **Independent Contractor** for liability arising out of any **Employment Claim** or **Third Party Claim**.

(2) Section III Exclusions (A)(4) of the Coverage Section identified above is amended to read in its entirety as follows:

(4) for bodily injury, mental anguish, emotional distress, sickness, disease or death of any person or damage to or destruction of any tangible property including loss of use thereof whether or not it is damaged or destroyed; provided that this Exclusion (A)(4) shall not apply to any emotional distress, mental anguish or humiliation resulting from any **Discrimination**, **Harassment**, **Retaliation**, **Workplace Tort**, **Wrongful Employment Decision** or **Third Party Discrimination or Sexual Harassment** committed, attempted, or allegedly committed or attempted by an **Insured** and alleged in any **Employment Claim**, or any **Third Party Claim** if applicable;

The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this policy shall remain unchanged.

Robert Hamburger

Authorized Representative