STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS

PROVIDENCE, SC.

SUPERIOR COURT
CIVIL ACTION NO.

KEY WEST MARKETING, INC.,
Plaintiff

v.

MIX IT FOR ME, INC., INTERACTIVE LEARNING NETWORKS, INC. d/b/a CUTTING EDGE TECHNOLOGIES, CORY JOHNSON, DAVID ANDREWS, and SALLY HERSEY
Defendants

**COMPLAINT**

**Parties**

1. Plaintiff, Key West Marketing, Inc., is a corporation organized under the laws of the State of California and has a principal place of business at 4430 Cerritos Avenue, Los Alamitos, California.

2. Defendant, Mix It for Me, Inc., is a Rhode Island corporation with a principal place of business at 275 Westminster Street, Providence, Rhode Island.

3. Defendant, Interactive Learning Networks, Inc. d/b/a Cutting Edge Technologies, is a New York corporation doing business in the State of Rhode Island and has a principal place of business at 1085 Route 25A, Stony Brook, New York.

4. Defendant Cory Johnson is the President of Mix It For Me, Inc. with a usual place of business at 275 Westminster Street, Providence, Rhode Island.

5. Defendant, David Andrews, is the Chief Executive Officer of Defendant, Mix It for Me, Inc., with a usual place of business at 275 Westminster Street, Providence, Rhode Island.

6. Defendant Sally Hersey is Chief Project Director for Mix It For Me, Inc. with a principal place of business at 275 Westminster Street, Providence, Rhode Island.

**Facts**

7. Plaintiff, Key West Marketing, Inc. ("Key West"), is a seller of home entertainment equipment such as video games and systems.

8. Defendants, Mix It for Me, Inc. ("Mix It") and Interactive Learning Networks, Inc. d/b/a Cutting Edge Technologies ("Cutting Edge"), are suppliers and distributors of home entertainment equipment such as video games and systems, and sell such equipment to merchants such as Key West.

9. On or before December 30, 2005, Key West entered into a sales transaction with Mix It by ordering 3,000 Sony Play Station Portable ("PSPs") systems at a unit price of $160.00 per unit, for a total sales price of $480,000.00. The transaction was invoiced by Mix It as Invoice No. 1006123005001.

10. At the time Key West entered into this invoice, Mix It through statements from defendants Hersey, Andrews, and Johnson expressly represented that it had the items referenced in the invoice in stock and ready for immediate delivery.

11. In direct reliance on these representations, on or about December 30, 2005, Key West wired and paid Mix It the sum of $480,000.00 as payment for Invoice No. 1006123005001.

12. None of the Sony PSP products under Invoice No. 1006123005001 have been received by Key West.

13. On or about December 28, 2005, Key West entered into another sales transaction with Mix It and Cutting Edge. Cutting Edge served as a middleman and/or broker for Mix It in this transaction.

14. Under this sales transaction, Key West ordered 5,400 Sony Play Station II ("PS2") units at a unit price of $112.00, for a total invoice price of $604,800.00. Key West also ordered 2,250 Sony PSP 1001K/98500 Value Pak units at a unit price of $205.00, for a total price of $461,250.00. These agreements were documented by Cutting Edge Invoice No. 1226-500 and Invoice No. 1225-500A.

15. At the time of ordering the goods referenced in Paragraph 14 of this Complaint, Key West was advised by defendant Andrews in a conference call with Cutting Edge and Mix It that the goods were available for immediate shipment.

16. In direct reliance on Mix It's representations, Key West wired and paid the total sales price of $1,066,050.00 to Cutting Edge.

17. Key West was advised by Cutting Edge's President that Mix It would be responsible for shipping the goods.

18. Key West is unable to ascertain whether any of the goods or products purchased or bought by Key West and represented by Cutting Edge Invoice No. 1226-500 and Invoice No. 1225-500A have been received by Key West based on confusing and contradictory stories from the defendants.

19. Cutting Edge advised Key West that it had paid all of Key West's monies over to Mix It.

20. Mix It denies receiving the funds from Cutting Edge.

21. Mix It confusingly and simultaneously claims that it has not received any payment on the Cutting Edge invoice but at the same time that it has shipped all 5,400 PS2 units, and that 1,725 of the 2,250 Sony PSP units were shipped but they have never been received by Key West.

22. Key West, in good faith, on or about January 6, 2006, entered into a purported sales transaction with Mix It under which Key West ordered 24,000 Sony PS2 units with a unit price of $89.00 per unit, 988 X-Box 360 units with a unit price of $325.00 per unit, and 840 X-Box Forza units with a unit price of $110.00 per unit, for a total sales price of $2,064,500.00. This transaction is represented by Mix It Invoice No. 1006010606002.

23. Again Mix It through defendants Hersey and Andrews misrepresented that the product subject to this invoice was available for immediate delivery, this time providing a picture of the purported goods via email conveyed over interstate wires.

24. Pursuant to the terms of the invoice, Key West was required to pay a twenty percent (20%) deposit of $500,000.00 on the order.

25. Key West wired and paid this $500,000.00 deposit to Mix It that day, on January 6, 2006.

26. Subsequent to the placement of the order, Mix It unilaterally changed the deposit terms and demanded payment in full on this invoice before it would ship the product.

27. Thereafter on January 10, 2006, Key West and defendant Hersey, pursuant to the consent of defendant Johnson agreed that Key West would deposit another $750,000.00 and Key West would "wire the balance upon delivery of the product via truck."

28. In direct reliance on that agreement, Key West wired and paid $750,000 to Mix It that same day, January 10, 2006.

29. Key West's payments to Mix It on invoice No. 10060106002 total $1,250,000.00.

30. On or about January 11, 2006, Mix It delivered 5,200 Play Station 2 units, though it is impossible at this time for Key West to know on which invoices these goods were shipped based on the confusing and contradictory statements of defendants. Key West also

received 250 X Box Forza from Mix It, which Mix It stated was intended for delivery to another customer who could not accept them.

31. No further goods or products have been delivered to Key West.

32. After January 10, 2006 and the receipt of a total of $1,250,000, Mix It again unilaterally sought to change the terms of the invoice for Key West the 24,000 PS2 units. Mix It insisted that it would not ship the goods under this invoice unless and until Key West pays the entire balance prior to shipment.

33. Key West never agreed to pay the entire invoiced amount prior to shipment; in fact the agreement reached was expressly to the contrary.

34. On or about January 19, 2006, Key West, through counsel, wrote to Cutting Edge and Mix It and demanded written assurances from defendants, pursuant to UCC § 2-609, regarding the ordered goods. Specifically, Key West demanded that defendants provide it written assurances with regard to the exact date and method of delivery of the ordered goods. No such written assurances have been received by Key West from Cutting Edge and/or Mix It.

35. Mix It and David Andrews have orally advised Key West on numerous occasions that the goods under these various invoices would be shipped, but none of these shipping dates have held.

36. After demands for the product by Key West's counsel were made, Mix It, through David Andrews, admitted in email correspondence that they did not have the goods in stock, nor could they get such goods to deliver to Key West.

37. To date, despite Key West's demands for the goods, Key West has not received the goods purchased and/or paid for.

38. At present, Key West has paid a total of $3,642,550 to Mix It and Cutting Edge on the above-referenced invoices and has received only $572,300 worth of that product.

**COUNT I**
**(RESCISSION OF CONTRACT WITH MIX IT)**

39. Key West repeats and realleges the allegations contained in Paragraphs 1-38 of this Complaint as each were set forth fully herein.

40. Based on Mix It's conduct in regards to the sales agreement represented by Mix It Invoice No. 1006010606002, under which Key West agreed to purchase and Mix It agreed to sell $2,064,500.00 worth of goods, the parties did not arrive at a meeting of the minds and/or an agreement with regard to the terms of the cash deposits and delivery of the goods upon payment.

41. Such terms were material terms of the agreement between Key West and Mix It, and in the absence of any agreement on these material terms, there was no contract between the parties.

42. In light of Mix It and Key West's failure to agree on material terms of the sales agreement, Key West is entitled to a rescission of the sales agreement with Mix It represented by Mix It Invoice No. 10606010606002.

43. On rescission of this sales agreement, the parties should be placed in the same position they were in prior to the agreement, and Key West is entitled to a full and total refund of the $1,250,000.00 it has paid to Mix It under the aforementioned failed sales agreement.

**COUNT II**
**(BREACH OF CONTRACT AGAINST MIX IT)**

44. Key West repeats and realleges the allegations contained in Paragraphs 1-43 of this Complaint as if each were fully set forth herein.

45. Contracts for the sale of goods existed between Key West and Mix It These contracts are represented by Mix It Invoice Nos. 1006123005001 and 1006010606002 and Cutting Edge Invoice Nos. 1226-500 and 1225-500A.

46. Mix It breached said contracts by, *inter alia*, refusing and/or failing to deliver the goods ordered and paid for by Key West and by failing to deliver those goods as called for under its agreements.

47. As a result of Mix It's breaches of contract, Key West has suffered damages, costs, expenses and attorneys' fees.

**COUNT III**
**(BREACH OF CONTRACT AGAINST CUTTING EDGE)**

48. Key West repeats and realleges the allegations contained in Paragraphs 1-47 of this Complaint as if each were fully set forth herein.

49. A contract for the sale of goods existed between Key West and Cutting Edge. This contract is represented by Cutting Edge Invoice No. 1226-500 and Invoice No. 1225-500A.

50. Cutting Edge breached this contract by, *inter alia*, refusing and/or failing to deliver goods ordered and paid for by Key West.

51. As a result of Cutting Edge's breaches of contract, Key West has suffered damages, costs, expenses and attorneys' fees.

**COUNT IV**
**(BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING BY MIX IT AND CUTTING EDGE)**

52. Key West repeats and realleges the allegations contained in Paragraphs 1-51 of this Complaint as if each were fully set forth herein.

53. The aforementioned agreements between Key West and Mix It carry with them the implied covenant of good faith and fair dealing.

54. Mix It and/or Cutting Edge, by their conduct, breached the implied covenant of good faith and fair dealing it owed to Key West.

55. As a result of Mix It's and/or Cutting Edge's breaches of the implied covenant of good faith and fair dealing, Key West has suffered damages, costs, expenses and attorneys' fees.

**COUNT V**
**(FRAUD AND MISREPRESENTATION BY MIX IT)**

56. Key West repeats and realleges the allegations contained in Paragraphs 1-55 of this Complaint as if each were fully set forth herein.

57. Mix It, through its agents Johnson, Andrews and Hersey, negligently and/or fraudulently, knowingly and recklessly represented to Key West that they had the goods represented by the various invoices in stock and available for immediate delivery and that Mix It would immediately deliver and ship those goods to Key West upon Key West's payment of the purchase price or deposit for these goods.

58. Mix It intended for Key West to rely on these misrepresentations.

59. Mix It knew these misrepresentations to be false.

60. Key West reasonably relied upon such misrepresentations, to its detriment.

61. As a direct and proximate result of Mix It's misrepresentations, Key West has suffered damages, including costs, expenses and attorneys' fees.

**COUNT VI**
**(FRAUD AND/OR MISREPRESENTATION BY CORY JOHNSON, DAVID ANDREWS AND SALLY HERSEY)**

62. Key West repeats and realleges the allegations contained in Paragraphs 1-61 of this Complaint as if each were fully set forth herein.

63. Cory Johnson, David Andrews and Sally Hersey negligently and/or fraudulently, knowingly and recklessly represented to Key West that they had the goods

represented by the various invoices in stock and available for immediate delivery and that Mix It would immediately deliver and ship said goods to Key West upon Key West's payment of the purchase price or deposits for said goods.

64. Johnson, Andrews and Hersey intended for Key West to rely on these misrepresentations.

65. Johnson, Andrews and Hersey knew those representations to be false.

66. Key West reasonably relied upon such misrepresentations, to its detriment.

67. As a direct and proximate result of Johnson's, Andrews' and Hersey's misrepresentations, Key West has suffered damages, including costs, expenses and attorneys' fees.

**COUNT VII**
**(PROMISSORY ESTOPPEL AGAINST MIX IT AND CUTTING EDGE)**

68. Key West repeats and realleges the allegations contained in Paragraphs 1-67 of this Complaint as if each were fully set forth herein.

69. Mix It and Cutting Edge made promises to Key West to immediately ship and/or deliver goods and/or products to Key West upon Key West's payment of the purchase price and/or deposit for the products.

70. Key West reasonably relied upon the promises of Mix It and Cutting Edge, to its detriment, and made payment of over $3.6 million to Mix It and/or Cutting Edge for the purchase of products.

71. As a result of Mix It and Cutting Edge's refusal and/or failure to abide by and/or carry out their promises to deliver goods to Key West, Key West has suffered damages, including costs, expenses and attorneys' fees.

**COUNT VIII**
**(UNJUST ENRICHMENT)**

72. Key West repeats and realleges the allegations contained in Paragraphs 1-71 of this Complaint as if each were fully set forth herein.

73. Key West paid a substantial amount of monies to Mix It and Cutting Edge with a reasonable expectation that it would receive the goods and products that it had agreed to purchase from Mix It and Cutting Edge.

74. Mix It and Cutting Edge have received the benefit, use and possession of the monies paid to them by Key West, but have not fulfilled their obligations to deliver and provide to Key West the goods and/or products they agreed to sell to Key West.

75. Should Mix It and Cutting Edge be permitted to retain the monies of Key West, Mix It and Cutting Edge will be unjustly enriched, to the detriment of Key West, which has been deprived of its monies by Mix It and Cutting Edge's wrongful conduct.

76. It would be inequitable and unjust to permit Mix It and Cutting Edge to retain the monies paid by Key West.

**COUNT IX**
**(CONSTRUCTIVE TRUST)**

77. Key West repeats and realleges the allegations contained in Paragraphs 1-76 of this Complaint as if each were fully set forth herein.

78. Mix It and Cutting Edge have received the benefit of the use, control and possession of Key West's monies as a result of Mix It and Cutting Edge's wrongful conduct.

79. Mix It and Cutting Edge knew, or should have known, that the monies they acquired from Key West were taken by their wrongful and/or fraudulent activity.

80. It would be unjust and inequitable to permit Mix It and Cutting Edge to

retain the funds taken from Key West.

81. The funds taken from Key West constitute the proceeds of Mix It and Cutting Edge's wrongful activities, and this Court should impose a constructive trust over those monies taken or property directly traceable to those funds taken by Mix It and Cutting Edge.

**COUNT X**
**(PRIVATE ACTION UNDER RHODE ISLAND RACKETEERING INFLUENCE AND CORRUPT ORGANIZATIONS ACT, R.I. GEN. LAWS §§ 7-15-1, *ET SEQ.* AGAINST DEFENDANTS, DAVID ANDREWS, CORY JOHNSON AND SALLY HERSEY)**

82. Key West repeats and realleges the allegations contained in Paragraphs 1-81 of this Complaint as if each were set forth fully herein.

83. Rhode Island's Racketeer Influenced and Corrupt Organizations ("RICO") law makes it unlawful for "any person employed by or associated with any enterprise to conduct or participate in the conduct of the affairs of the enterprise through racketeering activity. . . ." R.I. Gen. Laws § 7-15-2(c). An "enterprise" for the purposes of Rhode Island's RICO statute "includes any sole proprietorship, partnership, corporation, association, or other legal entity" as well as "any union or group of individuals associated for a particular purpose although not a legal entity." R.I. Gen. Laws § 7-15-1(a). "Racketeering activity" is "any act or threat involving . . . larceny . . . ." R.I. Gen. Laws § 7-15-1(c) Larceny encompasses stealing, fraudulent conversion and obtaining money by false pretenses. R.I. Gen. Laws §§ 11-41-1, 11-41-3, 11-41-4.

84. Defendants, Johnson, Andrews and Hersey falsely, fraudulently and knowingly misrepresented to Key West that Mix It had goods represented by the various invoices for sale and would immediately deliver and ship the goods to Key West upon Key West's payment of the purchase price for said goods and/or the payment of a substantial money deposit on said goods.

85. The false, fraudulent and knowing misrepresentations made by Johnson,

Andrews and Hersey to Key West were criminally and fraudulently intended to induce Key West to rely on the misrepresentations and to deprive Key West of monies.

86. The conduct of Johnson, Andrews and Hersey constituted a crime of larceny under Rhode Island law.

87. Johnson, Andrews and Hersey are each "persons" as defined under R.I. Gen. Laws, §§ 7-15-1, *et seq.* Defendant, Mix It for Me, Inc., is an enterprise as defined under R.I. Gen. Laws, §§ 17-15-1, *et seq.*

88. The conduct and acts of Johnson, Andrews and Hersey constitute racketeering activity under R.I. Gen. Laws, §§ 17-5-1, *et seq.*, and are violative of R.I. Gen. Laws, § 7-15-2.

89. As a result of Johnson's, Andrews' and Hersey's racketeering activities while they were employed by Mix It, Key West has suffered damages and loss of monies and the incurring of costs, expenses and attorneys' fees.

WHEREFORE, Key West requests that this Court:

1. Order the immediate rescission of the sales agreement between Key West and Mix It, which is represented by Mix It Invoice No. 10060106002 and that this Court issue an order to Mix It that Mix It return any and all monies paid to it by Key West under the rescinded sales agreement forthwith;

2. Enter judgment for Key West on all counts of this Complaint requiring that defendants pay damages to Key West and statutory interest in an amount this Court deems appropriate;

3. Enter an Order deeming and declaring that the funds taken by Mix It and Cutting Edge from Key West are the property of Key West and that Mix It and Cutting Edge are not entitled to any portion of the monies and, therefore, establish a constructive trust for the

benefit of Key West consisting of those funds taken by Mix It and Cutting Edge from Key West or any property directly traceable to those funds;

4. Enter an Order declaring that the funds taken by Mix It and Cutting Edge from Key West are the property of Key West, that Mix It and Cutting Edge are not entitled to any portion of the monies wrongfully taken from Key West, and ordering that the funds be sequestered and/or escrow with the Court, and enter judgment in favor of Key West in an amount to be determined by this Court;

5. Award treble damages to Key West pursuant to R.I. Gen. Laws, § 17-15-4;

6. Award Key West interest and attorneys' fees; and

7. Award Key West such other relief as it deems just and appropriate.

**JURY TRIAL**

Plaintiff demands a jury trial on all issues so triable.

KEY WEST MARKETING, INC.

By Its Attorneys,

PARTRIDGE SNOW & HAHN LLP

Howard Merten (#3171)
Michael J. Murray (#6404)
180 South Main Street
Providence, RI 02903
(401) 861-8200
(401) 861-8210 FAX

DATED: February 1, 2006

238097_1/5115-2